[Cite as *Boone Coleman Constr., Inc. v. Village of Piketon*, 2014-Ohio-2377.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| BOONE COLEMAN CONSTRUCTION, INC., | : | Case No. 13CA836 |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | |
| v. | : | <u>DECISION AND</u> |
| | : | <u>JUDGMENT ENTRY</u> |
| VILLAGE OF PIKETON, OHIO, | : | |
| | : | |
| Defendant-Appellee. | : | **RELEASED: 5/22/2014** |

<u>APPEARANCES</u>:

Stephen C. Rodeheffer and John A. Gambill, Portsmouth, Ohio, for appellant.

Eric B. Travers and Timothy A. Kelley, Kegler Brown Hill & Ritter, L.P.A., Columbus, Ohio, for appellee.

Harsha, J.

{¶1}    Appellant, Boone Coleman Construction, Inc. ("Boone Coleman"), filed a complaint seeking the difference between what it actually received and the price stated in a construction contract between it and appellee, Village of Piketon, Ohio.  Boone Coleman also sought additional compensation for work it performed to correct subsurface problems and to make revisions to a retaining wall and a traffic signal while performing the contract.

{¶2}    Boone Coleman asserts that the trial court erred in entering summary judgment rejecting its claim for the unpaid contract amount and granting the village's counterclaim for liquidated damages because the 397-day delay in performing the work was the village's fault.  However, Boone Coleman did not complete the construction contract within the time specified in the contract and it did not request an extension of time in accordance with the express terms of the agreement.

{¶3}    Boone Coleman also argues the liquidated damages provision constituted an unenforceable penalty.  We agree because viewing the contract as a whole in its application, the amount of damages is so manifestly unreasonable and disproportionate that it plainly constitutes an unenforceable penalty.  We sustain that portion of Boone Coleman's first assignment of error.

{¶4}    Boone Coleman next contends that the trial court erred in denying its claims for additional compensation based on additional work it performed to correct subsurface problems and to revise the retaining wall and traffic signal.  We reject this contention because Boone Coleman did not follow the parties' unambiguous notice provisions to claim additional compensation.  And the contract explicitly precluded recovery for additional costs related to subsurface conditions encountered by Boone Coleman.

{¶5}    Therefore, we reverse that portion of the trial court's summary judgment enforcing the liquidated damages provision and remand that portion of the case for further proceedings.  We affirm the remainder of the judgment

## I.  FACTS

{¶6}    In 2007, Piketon solicited bids for a construction project titled "Pike Hill Roadway and Related Improvements."  The project was described as:

> Construction of a new traffic signal at the intersection of US Route 23 and Market Street, construction of approximately 330 linear feet of steel H-pile/concrete lagging retaining wall, approximately 360 LF of full depth roadway reconstruction, miscellaneous storm drainage improvements, guard rail replacement, asphalt resurfacing of portions of Market Street and Shyville Road and other related improvements.

**{¶7}**   Because of safety concerns there had been a longstanding desire for a traffic light at the intersection of U.S. Route 23 and Market Street in the village.  The need for a traffic light at the intersection was the driving force behind the construction project.  The project was designed by Piketon's engineer, Woolpert, Inc.

**{¶8}**   Boone Coleman submitted the lowest bid, and in July 2007, the parties entered into a contract for Boone Coleman to complete the construction project for $683,300.  The contract provided that the time limits were of the essence, that work would be substantially completed within 120 days after the date when the contract time began, and that as liquidated damages for delay, the contractor would pay the owner $700 for each day after the specified completion date until the project was substantially completed.  The specific provisions of the contract stated:

**ARTICLE 4 – CONTRACT TIMES**

4.01. Time *of the Essence*

    A.  All time limits for Milestones, if any, Substantial Completion, and completion and readiness for final payment as stated in the Contract Documents are of the essence of the Contract.

4.02 *Days to Achieve Substantial Completion and Final Payment*

    A.  The Work will be substantially completed within **120** days after the date when the Contract Times commence to run as provided in paragraph 2.03 of the General Conditions, and completed and ready for final payment in accordance with paragraph 14.07 of the General Conditions within **120** days after the date when the Contract Times commence to run.

4.03 *Liquidated Damages*

    A.  CONTRACTOR and OWNER recognize that time is of the essence of this Agreement and that OWNER will suffer financial loss if the Work is not completed within the time(s) specified in paragraph 4.02 above, plus any extensions thereof allowed in accordance with Article 12 of the General Conditions.  The parties also recognize the delays,

expense, and difficulties involved in proving in a legal or arbitration [proceeding] the actual loss suffered by OWNER if the Work is not completed on time. Accordingly, instead of requiring any such proof, OWNER and CONTRACTOR agree that as liquidated damages for delay (but not as a penalty), CONTRACTOR shall pay OWNER **$700.00** for each day that expires after the time specified in paragraph 4.02 for Substantial Completion until the Work is substantially complete.

**{¶9}** The contract time commenced on July 30, 2007, which meant that the required date of completion of the project was November 27, 2007. The parties subsequently agreed to an extension of the completion date to May 30, 2008.

**{¶10}** In an April 2008 letter to Woolpert, Boone Coleman requested another extension of the project completion date because its subcontractor for the installation of the traffic signal was unable to perform due to financial difficulties. In fact, the subcontractor had not ordered any of the required materials. By a letter in late May 2008, the village notified Boone Coleman that if it did not complete the project by May 30, 2008, it would begin assessing the specified liquidated damages of $700 per day. The village notified Boone Coleman in early July 2008 that it was assessing damages of $700 per day as of May 31, 2008 until the completion of the project.

**{¶11}** Boone Coleman did not complete the project by installing the traffic light and coordinating approval by the Ohio Department of Transportation ("ODOT") until July 2, 2009, which was 397 days after the agreed project completion date of May 30, 2008.

**{¶12}** During the project, Boone Coleman did not request extensions of time or additional compensation in accordance with the parties' contract, which set forth a specific procedure to resolve these claims:

10.05 *Claims and Disputes*

A. *Notice:* Written notice stating the general nature of each Claim, dispute, or other matter shall be delivered by the claimant to the

ENGINEER and the other party to the Contract promptly (but in no event later than 30 days) after the start of the event giving rise thereto. Notice of the amount or extent of the Claim, dispute, or other matter with supporting data shall be delivered to the ENGINEER and the other party to the Contract within 60 days after the start of such event (unless ENGINEER allows additional time for claimant to submit additional or more accurate data in support of such Claim, dispute, or other matter). A Claim for adjustment in Contract Price shall be prepared in accordance with the provisions of paragraph 12.01.B. A Claim for an adjustment in Contract Time shall be prepared in accordance with the provisions of paragraph 12.02.B. Each Claim shall be accompanied by claimant's written statement that the adjustment claimed is the entire adjustment to which the claimant believes it is entitled as a result of said event. * * *

* * *

D. No Claim for an adjustment in Contract Price or Contract Times (or Milestones) will be valid if not submitted in accordance with this paragraph 10.05.

* * *

12.01 *Change of Contract Price*

A. The Contract Price may only be changed by a Change Order or by a Written Amendment. Any Claim for an adjustment in the Contract Price shall be based on written notice submitted by the party making the claim to the ENGINEER and the other party to the Contract in accordance with the provisions of paragraph 10.05.

* * *

12.02 *Change of Contract Times*

A. The Contract Times(or Milestones) may only be changed by a Change Order or by a Written Amendment. Any Claim for an adjustment in the Contract Times (or Milestones) shall be based on written notice submitted by the party making the claim to the ENGINEER and the other party to the contract in accordance with the provisions of paragraph 10.05.

**{¶13}** After the village paid Boone Coleman $535,823 of the $683,300 price under the construction contact, Boone Coleman filed a complaint in the Pike County Court of Common Pleas seeking to recover the remaining $147,477 allegedly due under the contract. Boone Coleman also sought $20,120 for additional work it performed to repair subsurface problems it allegedly uncovered after it began its work and

$86,780.26 for revisions it made to the retaining wall and traffic signal. Piketon filed an answer in which it denied liability for any of Boone Coleman's claims and a counterclaim seeking liquidated damages for Boone Coleman's delay in completing the construction project. The village subsequently filed a motion for summary judgment, and Boone Coleman filed a memorandum in opposition.

{¶14} The trial court granted the village's motion for summary judgment and entered judgment in its favor on its counterclaim in the net amount of $130,423 ($277,900 in liquidated damages less the $147,477 in the unpaid contract balance), plus interest. The trial court determined that the liquidated damages provision of the construction contract was valid and enforceable, that Boone Coleman was contractually responsible for delays in the completion of the project, and that Boone Coleman did not provide the required written notice for extensions of time or additional compensation.

{¶15} This appeal ensued.

## II. ASSIGNMENTS OF ERROR

{¶16} Boone Coleman assigns the following errors for our review:

I.      THE TRIAL COURT ERRED IN GRANTING APPELLEE-
        PIKETON'S MOTION FOR SUMMARY JUDGMENT AS TO
        PIKETON'S COUNTERCLAIM AND BRANCH ONE OF BOONE
        COLEMAN'S CONSTRUCTION COMPLAINT.

II.     THE TRIAL COURT ERRED IN GRANTING PIKETON'S MOTION
        FOR SUMMARY JUDGMENT AS TO BRANCHES TWO AND
        THREE OF BOONE COLEMAN CONSTRUCTION'S COMPLAINT.

## III. STANDARD OF REVIEW

{¶17} Appellate review of summary judgment decisions is de novo, governed by the standards of Civ.R. 56. *Marusa v. Erie Ins. Co.*, 136 Ohio St.3d 118, 2013-Ohio-1957, 991 N.E.2d 232, ¶ 7. Summary judgment may be granted only when (1) there is

no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Id.*; *see also* Civ.R. 56(C).

**{¶18}** In addition, this case involves the interpretation of the parties' construction contract, which is also a matter of law we review de novo. *Shafer v. Newman Ins. Agency*, 4th Dist. Highland No. 12CA11, 2013-Ohio-885, ¶ 6; *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-401, 972 N.E.2d 586, ¶ 14, quoting *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9 (" '[t]he construction of a written contract is a matter of law that we review de novo' "). Our role is to ascertain and give effect to the intent of the parties, which is presumed to lie in the contract language. *Arnott* at ¶ 14; *Marusa* at ¶ 8.

**{¶19}** Finally, the issue of whether a contract clause provides for liquidated damages or an unenforceable penalty raises a question of law that we review de novo. *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 380, 613 N.E.2d 183 (1993); *Heskett Ins. Agency, Inc. v. Braunlin*, 4th Dist. Ross No. 11CA3234, 2011-Ohio-6100, ¶ 22.

IV.  LAW AND ANALYSIS

A.  Failure to Comply with Notice Provisions for Extension of Time

or Modification of Contract Price

**{¶20}** In its first assignment of error, Boone Coleman asserts the delay in completing the project was caused by matters that were not its responsibility and were attributable to the village. Therefore, it contends that the trial court erred in granting

summary judgment in favor of the village on Boone Coleman's claim for the balance due and the village's counterclaim for liquidated damages. In its second assignment of error, Boone Coleman contends that the trial court erred in granting the village's motion for summary judgment on its claims for additional compensation for its work to repair undisclosed subsurface problems and to perform revisions to the retaining wall and the traffic signal. The failure of Boone Coleman to comply with the notice provisions of the contract controls the outcome of both of these assignments of error.

{¶21} Notice provisions in contracts operate as conditions precedent to a party's recovery of damages for a breach when the parties expressly indicate such an intent. *See Moraine Materials Co. v. Cardinal Operating Co.*, 2d Dist. Montgomery No. CA 16782, 1998 WL 785363, *6 (Nov. 13, 1998). Consequently, "[i]t is well established under Ohio Contract Law that a party must comply with all express conditions to be performed in case of breach before it can claim damages by reason of the breach." *Au Rustproofing Ctr., Inc. v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir.1985). And a "right of action requiring notice as a condition precedent cannot be enforced unless the notice provided for has been given." *Id.*

{¶22} Here, the parties explicitly agreed that Boone Coleman would provide written notice of the general nature of any request for extensions of time and/or adjustment to the contract price to both the village and Woolpert within 30 days "after the start of the event giving rise" to Boone Coleman's request. The parties also agreed that Boone Coleman would provide a second written notice of the amount or extent of its claim with supporting data to the village and Woolpert within 60 days of the event. Under Section 10.05(d) of the construction contract, the parties specified that "[n]o

claim" for an adjustment in either the contract time or price "will be valid" unless submitted in accordance with these provisions.

**{¶23}** In his deposition, George McClennen, Boone Coleman's designated corporate representative in this case, admitted that the company did not give the village notice of its requests for extension of the project completion date or additional compensation.

**{¶24}** To justify its 397-day delay in completing the project, Boone Coleman sent two letters requesting extensions of time, both to Woolpert. In April 2008, it requested an extension past the May 30, 2008 deadline because of its problems with its subcontractor. And in March 2009, it requested an extension of time because the railroad had not run its wires to Boone Coleman's system and that this could not occur until the village obtained a railroad permit. Neither of these letters complied with the construction contract's notice provisions because they were not sent to the village. Moreover, Boone Coleman's problems with its subcontractor would not have warranted an extension of the project completion date because the contract stated that "[d]elays attributable to and within the control of a Subcontractor or Supplier shall be deemed to be delays within the control of" Boone Coleman. Furthermore, Boone Coleman's March 2009 request for an extension was untimely, i.e. they made it after the expiration of the project completion date.

**{¶25}** On its claims for additional compensation, Boone Coleman provided Woolpert with three written notices: a May 6, 2008 letter requesting $26,219 for work to correct subsurface problems discovered upon excavation for the new pavement section of Market Street; an October 15, 2008 letter requesting the approval of $66,069.75 in

extra costs to cover construction revisions to the retaining wall; and an October 24, 2008 letter requesting a change order to cover $23,301.67 for revisions to the traffic signal.  These letters did not comply with the contractual notice provisions because they were not sent to the village, they were not submitted within the required 30-day period, and they were not followed with a second, more detailed notice submitted within the required 60-day period.

{¶26}  Boone Coleman argues that its failure to comply with the parties' notice provisions for requests for extension of time and additional compensation is not fatal because the village had actual notice of the requests through Woolpert.  Boone Coleman's argument is meritless.  The Supreme Court of Ohio held as much in rejecting a contractor's similar claim:

> [W]e reject [the contractor's] argument that it was excused from complying with the specific change-order procedure for requesting extensions because the state had actual notice of the need for changes to the deadline, and therefore any failure to comply with procedure was harmless error.  The record lacks evidence of either an affirmative or implied waiver by the department or OSU of the change-order procedures contained in the contract.  [The contractor] has not convinced us that its failure to request extensions was harmless to OSU.  To the contrary, [the contractor] agreed that the contract language stated that failure to provide written notice "shall constitute a waiver by the Contractor of any claim for extension of or mitigation of Liquidated Damages."  The court of appeals correctly concluded that [the Contractor] "has not demonstrated that it was entitled to disregard its obligations under that part of the contract * * *."

*Dugan & Meyers Constr. Co., Inc. v. Ohio Dept. of Adm. Servs.*, 113 Ohio St.3d 226, 2007-Ohio-1687, 864 N.E.2d 68, ¶ 41.

{¶27}  Under *Dugan & Meyers*, " 'something more than actual notice on the part of the state is required to excuse a contractor from complying with its obligations regarding change-order procedures in public works contracts.' " *J & H Reinforcing & Structural Erectors, Inc. v. Ohio School Facilities Comm.*, 10th Dist. No. 12AP-588,

2013-Ohio-3827, ¶ 41, quoting *Stanley Miller Constr. Co. v. Ohio School Facilities Comm.*, 10th Dist. No. 10AP-298, 2010-Ohio-6397, ¶ 17. As in these cases, the record here lacks any evidence of either an affirmative or implied waiver by the village of the detailed notice provisions of the parties' construction contract.

**{¶28}** Therefore, by failing to follow the detailed notice provisions for its claims for an extension of the project completion date and for additional compensation, Boone Coleman did not prove its entitlement to either adjustment. We overrule Boone Coleman's first assignment of error insofar as it argues that its 397-day delay in completing the project was justified. We also overrule Boone Coleman's second assignment of error regarding its claims for additional compensation.

B. Waiver of Claims for Subsurface Conditions

**{¶29}** Even if we assume that Boone Coleman had complied with the notice provisions for its claim seeking additional compensation to remediate subsurface conditions, its claim still must fail. Boone Coleman claims that it relied on inaccurate site plans concerning subsurface conditions in preparing and submitting its bid so that under the doctrine expressed in *United States v. Spearin*, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918), it was not responsible for those defects. In *Spearin*, the United States Supreme Court recognized that when a contractor is "bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications." *Id.* at 136.

**{¶30}** However, Boone Coleman waived this argument by not raising it in opposition to the village's motion for summary judgment. It is axiomatic that a litigant's failure to raise an issue at the trial court level waives its right to raise that issue on

appeal; appellate courts generally will not consider any error a party failed to bring to the trial court's attention when the trial court could have avoided or corrected the error. *Lauer v. Layco Enterprises, Inc.*, 4th Dist. Washington App. No. 12CA40, 2013-Ohio-1916, ¶ 11. Therefore, Boone Coleman waived this argument on appeal by failing to raise it below. *See Central Allied Enterprises, Inc. v. Adjutant General's Dept.*, 10th Dist. No. 10AP-701, 2011-Ohio-4920, ¶17, fn. 1 (contractor waived arguments concerning *Spearin* doctrine by failing to present them to the trial court).

**{¶31}** Moreover, even if we chose not to apply waiver, Boone Coleman was not entitled to reimbursement to correct subsurface problems because the construction contract expressly stated that it was the "sole responsibility of the Contractor to take any and all measures he feels necessary to ascertain the subsurface conditions prior to bidding" and that "[n]o claims for additional costs will be considered for material, labor, equipment, or subcontractors/subconsultants to address subsurface conditions encountered during construction." The *Spearin* doctrine does not invalidate express contractual provisions like these. *See S & M Constructors, Inc. v. Columbus*, 70 Ohio St.2d 69, 75, 434 N.E.2d 1349 (1982) (contractor's claim for additional compensation because subsurface conditions reported to contractors before bidding differed materially from actual subsurface conditions encountered during the project was properly rejected because of provision in which contractor agreed that it would make no claim against the city for subsurface conditions), quoting *Spearin* at 136 (" 'Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered' ").

**{¶32}** Thus, we overrule Boone Coleman's second assignment of error.

### C.  Liquidated Damages Provision is Unenforceable

**{¶33}**  In Boone Coleman's remaining argument in its first assignment of error, it asserts that the trial court erred in assessing liquidated damages of $700 a day for its 397-day delay in completing the project.  As previously discussed, Boone Coleman did not complete the contract by the agreed upon deadline and did not properly request an extension of time under the notice provisions set forth in the contract.  However, it claims that the liquidated damages of $277,900 constitutes an unenforceable penalty.

**{¶34}**  "The freedom to contract is a deep-seated right that is given deference by the courts."  *Cincinnati City School Dist. Bd. of Edn. v. Conners*, 132 Ohio St.3d 468, 2012-Ohio-2447, 947 N.E.2d 78, ¶ 15.  In general, "parties are free to enter into contracts which apportion damages in the event of default."  *Lake Ridge*, 66 Ohio St.3d at 381, 613 N.E.2d 183.  " 'The right to contract freely with the expectation that the contract shall endure according to its terms is as fundamental to our society as the right to write and to speak without restraint.' "  *Id.*, quoting *Blount v. Smith*, 12 Ohio St.2d 41, 47, 231 N.E.2d 301 (1967).

**{¶35}**  Nevertheless, penalty provisions in contracts are invalid on public policy grounds because a penalty attempts to coerce compliance with the contract instead of representing damages that may actually result from a failure to perform.  *Heskett*, 2011-Ohio-6100, at ¶ 22; *Lake Ridge* at 381.  In *Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St.3d 27, 465 N.E.2d 392 (1984), paragraph one of the syllabus, the Supreme Court of Ohio set forth the following three-part test for evaluating the enforceability of a liquidated damages provision:

> Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear

and unambiguous terms, the amounts so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.

**{¶36}** As noted above, we conduct a de novo review to determine whether a liquidated damages clause operates in effect as an unenforceable penalty.

**{¶37}** As the parties acknowledged in their liquidated damages clause, there are "difficulties involved in proving in a legal or arbitration [proceeding] the actual loss suffered by [the village] if the Work is not completed on time."  The impetus for the construction project was the installation of the traffic light based on safety concerns, so the absence of this light during the period of Boone Coleman's lengthy delay increased the inconvenience and the safety risk for drivers over the roadway; these concerns are not easily quantifiable in damage terms.  *See Security Fence Group, Inc. v. Cincinnati*, 1st Dist. No. C-020827, 2003-Ohio-5263, ¶ 9 (in upholding a liquidated damages provision in a public construction contract involving the replacement of a bridge and a subcontract to provide guardrails and barriers for the project, the court observed that the "primary damage expected to flow from the breach of contract was inconvenience to the public, an amorphous form of damages").

**{¶38}** This is particularly so because, as Boone Coleman admits in its quotation of a treatise in its appellate brief, in construction contracts damages can seldom be reasonably estimated in advance.  Thus, courts should not permit a contractor to nullify a reasonable estimate of damages by inconclusive testimony.  *See* Ant. Brief, p. 15, fn. 45, quoting 5 Corbin, *Corbin on Contracts*, Section 1072; s*ee also Space Master*

*Internatl., Inc. v. Worcester*, 940 F.2d 16 (1st Cir.1991) (rulings on liquidated damages provisions in construction contracts are particularly deferential to the parties' agreement). Therefore, the damages incurred as a result of a delay were uncertain as to amount and difficult to prove.

**{¶39}** Next, applying the third part of the *Samon Sales* test, we find the plain and unambiguous language of the liquidated damages clause is consistent with the conclusion that the parties intended that damages in the amount of $700 per day would follow the contractor's breach of the project completion deadline. Boone Coleman is an experienced contractor who was represented by counsel during the bidding process. The parties themselves best knew their expectations regarding the agreement, and those expectations were reflected in the language used in the contract, which deemed time deadlines to be "of the essence" of their agreement.

**{¶40}** Nevertheless, although the evidence satisfies the first and third parts of the *Samson Sales* test, it did not meet the second part. That is, when we view the contract as a whole in its application, we conclude the amount of damages is so manifestly unreasonable and disproportionate that it is plainly unrealistic and inequitable. Given the circumstances of this case we conclude the amount of damages is so unreasonably high and so disproportionate to the consideration paid that the clause amounts to a penalty.

**{¶41}** In *Harmon v. Haehn*, 7th Dist. Mahoning No. 10 MA 177, 2011-Ohio-6449, ¶ 52, 54, the appellate court reached a similar conclusion notwithstanding the satisfaction of the first and third parts of the *Samson Sales* test because the stipulated damages were equal to nearly one-third of the ultimate selling price of the property:

However, even assuming that the damages at the time of the contract's formation were uncertain, and the contract is consistent with the parties' intention that damages in the amount of $250,000 should follow a breach, the amount of damages specified is manifestly unreasonable and thus the clause is a penalty pursuant to the second prong of the *Lake Ridge* test, "Reasonable compensation for actual damages is the legitimate objective of the liquidated damages provisions and, where the amount specified is plainly unrealistic and inequitable, courts will ordinarily regard the amount as a penalty." *Hunter v. BPS Guard Servs., Inc.* (1995), 100 Ohio App.3d 532, 551, 654 N.E.2d 405.  A damages provision is likewise unenforceable where the amount specified is manifestly disproportionate to the consideration paid or the damages that could foreseeably result from a breach.  *Samson Sales* at 29, 465 N.E.2d 392.
\*\*\*
In addition, the $250,000 stipulated damages amount is equal to nearly one-third of the ultimate selling price of the property.  Moreover, Harmon did not testify as to how the $250,000 bore a reasonable relationship to the amount of damages in the event of a breach.  This court has previously held where the appellants never testified to or presented any evidence of a method of calculation used to arrive at the stipulated damages amount, nor could their attorney recall any attempts at calculating the damages to arrive at the figure, there was no basis for concluding that the amount constituted anything more than a penalty, and that it was therefore unenforceable.  *Wright v. Basinger*, 7th Dist. No. 01 CA81, 2003-Ohio-2377, at ¶ 20.

**{¶42}** Like the clause that the court in *Harmon* found to be unenforceable, the clause in this matter produced an award nearly equal to 1/3 of the value of the contract, i.e., $277,900 in liquidated damages on a $683,300 total contract price.  And as in *Harmo*n, the party seeking to enforce the liquidated damages clause–the village here– did not present testimony or evidence to credibly support the relationship between the damages specified and the actual damages that would be incurred.  There is no cited evidence in the record, for example, of a history of accidents at the intersection where the traffic signal was placed.  Moreover, unlike the facts in *Security Fence*, 1st Dist. No. C-020827, 2003-Ohio-5263, there is no evidence here of the loss of a preexisting use of

the highway resulting from the construction delay; there was no loss of any existing traffic signal during construction.

{¶43}  Reasonable compensation for actual damages is the legitimate objective of liquidated damages provisions.  Where the resulting amount is manifestly inequitable and unrealistic, courts are justified in determining the provision to be an unenforceable penalty.  *Samson Sales* at 28.  Because we conclude that the liquidated damages clause here constituted an unenforceable penalty, we sustain this portion of Boone Coleman's first assignment of error.

## V.  CONCLUSION

{¶44}  The trial court properly granted summary judgment in favor of the village on Boone Coleman's claim, but erred in granting summary judgment in favor of the village on its counterclaim for liquidated damages.  Having sustained the part of Boone Coleman's fist assignment of error challenging the summary judgment on liquidated damages, we reverse that portion of the trial court judgment and remand that part of the case for further proceedings.  Having overruled Boone Coleman's remaining assignments of error, we affirm the remainder of the judgment of the trial court.

JUDGMENT AFFIRMED IN PART
AND REVERSED IN PART AND
CAUSE REMANDED.

Ringland, J., concurring in part and dissenting in part.

{¶45} I respectfully concur in part and dissent in part from the majority's decision. I concur with the majority's resolution of (1) Boone Coleman's second assignment of error dealing with Boone Coleman's counterclaim and (2) that portion of the first assignment of error relating to the liquidated damages. However, I dissent as to that portion of the first assignment of error relating to the trial court's determination of fault for the project delays as I would find that under Civ.R. 56, genuine issues of material fact exist concerning who was responsible for the delay in completing the traffic light portion of the project.

{¶46} "Unilateral and mutual delays, by which the owner causes some or all of his damages, cannot be the basis for his recovery of liquidated damages, absent a reasonable basis for apportioning those damages." *Mt. Olivet Baptist Church, Inc. v. Mid-State Builders, Inc.*, 10th Dist. Franklin No. 84AP-363, 1985 WL 10493 (Oct. 31, 1985). Through its passage of R.C. 4113.62(C)(1), the Ohio Legislature has made it clear that provisions in a construction contract that preclude liability for delay during the course of construction when the cause of the delay is the proximate result of the owner's act or failure to act are void and unenforceable.

{¶47} Boone Coleman has alleged that the delay was due to and caused by the village's failure to review and accept the railroad's design plans for the construction of the traffic signal through its agent, the project engineer. Boone Coleman alleges that the village failed to contract with the railway company for a tie-in between the roadway and railway signal systems. In turn, the village argues that Boone Coleman was contractually responsible to "coordinate" with the railroad during construction regarding

control wiring related to the proposed traffic signal and the existing railroad crossing controller.  The term "coordinate" in this context is ambiguous and must be resolved against the village.

**{¶48}**  Boone Coleman effectively argues that to follow that the village's interpretation of "coordinate" is unworkable as it would require Boone Coleman to negotiate and contract with the railway on behalf of the village, thereby usurping the village engineer's function.  Further, Boone Coleman argues that there is a question of fact as to whether it was comprehended at the time of the contract formation that a contract with the railway was needed.  Finally, because there is a question of fact as to whether Boone Coleman had the authority to contract on the village's behalf, there is also a question of fact as to whether the project delay was due to the actions or inactions of Boone Coleman, or those of the village.

**{¶49}**  Accordingly, I dissent on the issue of fault relating to the delay in completing the project and would remand to the trial court for further hearings and trial.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J.:  Concurs in Judgment and Opinion.
* Ringland, J.:  Concurs in part and Dissents in part with Opinion.


For the Court



BY:  _____
William H. Harsha, Judge



### NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**


* Robert P. Ringland, from the Twelfth Appellate District, sitting by assignment of The Supreme Court of Ohio in the Fourth Appellate District.