**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Piketon v. Boone Coleman Constr., Inc.,* **Slip Opinion No. 2016-Ohio-628.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-628

BOONE COLEMAN CONSTRUCTION, INC., APPELLEE, *v.* THE VILLAGE OF PIKETON, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Piketon v. Boone Coleman Constr., Inc.,* **Slip Opinion No. 2016-Ohio-628.]**

*Contracts—Public works—Enforceable liquidated-damages clause distinguished from unenforceable penalty—Samson Sales* tripartite test *applied—Provision for liquidated damages of $700 per day for delay of completion upheld—Reasonableness of provision determined by per diem amount rather than aggregate amount of damages assessed—If provision was reasonable at the time of formation and bears reasonable relation to actual damages, provision will be enforced.*

(No. 2014-0978—Submitted June 9, 2015—Decided February 24, 2016.)

APPEAL from the Court of Appeals for Pike County,

No. 13CA836, 2014-Ohio-2377.

_____

**O'CONNOR, C.J.**

**{¶ 1}** In this appeal arising from a public-road-construction contract, we consider our precedent on contractual liquidated-damages provisions. We expressly extend that precedent to public-works contracts, vacate the judgment of the court of appeals, and remand this cause to that court for reconsideration in light of our opinion.

## RELEVANT BACKGROUND

**{¶ 2}** In 2007, appellant, the village of Piketon, solicited bids for the "Pike Hill Roadway and Related Improvements" project. The project included the installation of a traffic light at the intersection of U.S. Route 23 and Market Street in Piketon and improvements to the roadway.

**{¶ 3}** Appellee, Boone Coleman Construction, Inc., submitted the lowest bid and was hired for the project. The parties entered into a contract in which Piketon agreed to pay Boone Coleman $683,300 to complete the work. The contract expressly provided that the time for completing the project was "of the essence"[1]

---

[1] The relevant provisions of the contract stated:

> **ARTICLE 4—CONTRACT TIMES**
> 4.01. *Time of the Essence*
> A. All time limits for Milestones, if any, Substantial Completion, and completion and readiness for final payment as stated in the Contract Documents are of the essence of the Contract.
> 4.02 *Days to Achieve Substantial Completion and Final Payment*
> A. The Work will be substantially completed within **120** days after the date when the Contract Times commence to run as provided in paragraph 2.03 of the General Conditions, and completed and ready for final payment in accordance with paragraph 14.07 of the General Conditions within **120** days after the date when the Contract Times commence to run.
> 4.03 *Liquidated Damages*
> A. CONTRACTOR and OWNER recognize that time is of the essence of this Agreement and that OWNER will suffer financial loss if the Work is not completed within the time(s) specified in paragraph 4.02 above, plus any extensions thereof allowed in accordance with Article 12 of the General Conditions. The parties also recognize the delays, expense, and difficulties involved in proving in a legal or arbitration [proceeding] the actual loss suffered

and that the project had to be substantially completed within 120 days of the date of commencement of the project. A liquidated-damages provision made clear that Boone Coleman would pay $700 to Piketon for each day after the specified completion date that the contract was not substantially completed.

{¶ 4} The date of commencement of the project was set for July 30, 2007. Thus, the contract required that the project be substantially completed 120 days later on November 27, 2007. Piketon granted Boone Coleman's first request for an extension, which moved the completion date to May 30, 2008. But when Boone Coleman sought another extension, Piketon refused to grant it and notified Boone Coleman that it would assess the contractually specified liquidated damages of $700 per day if the project was not completed by May 30, 2008. Boone Coleman did not do so, and on July 7, 2008, Piketon informed Boone Coleman that it was assessing damages of $700 per day, as of May 31, 2008, until the completion of the project.

{¶ 5} Boone Coleman did not complete the project until July 2, 2009—well over a year (397 days) after the parties' extended completion date of May 30, 2008.

{¶ 6} Boone Coleman brought suit against Piketon in the Pike County Common Pleas Court. Among other things, it alleged that Piketon had improperly

---

by OWNER if the Work is not completed on time. Accordingly, instead of requiring any such proof, OWNER and CONTRACTOR agree that as liquidated damages for delay (but not as a penalty), CONTRACTOR shall pay OWNER **$700.00** for each day that expires after the time specified in paragraph 4.02 for Substantial Completion until the Work is substantially complete.

(Boldface, underlining, and capitalization sic.)

failed to pay $147,477 of the contract price for the construction.[2]  Piketon counterclaimed for liquidated damages.

{¶ 7} Piketon moved for summary judgment. The trial court granted Piketon's motion and entered judgment in its favor, awarding Piketon $277,900 in liquidated damages.

{¶ 8} Boone Coleman appealed, asserting that the trial court erred in awarding Piketon liquidated damages.  The appellate court agreed.  Citing our decision in *Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St.3d 27, 465 N.E.2d 392 (1984), it held, "[W]hen we view the contract as a whole *in its application*, we conclude the amount of damages is so manifestly unreasonable and disproportionate that it is plainly unrealistic and inequitable."  (Emphasis added.) 2014-Ohio-2377, 13 N.E.3d 1190, at ¶ 40.  It concluded that because the "resulting amount [of liquidated damages] is manifestly inequitable and unrealistic, courts are justified in determining the provision to be an unenforceable penalty."  *Id.* at ¶ 43, citing *Samson Sales* at 28.  It reversed that portion of the trial court's judgment and remanded for further proceedings.

{¶ 9} We granted Piketon's request for discretionary review and agreed to address two related propositions of law:

---

[2] In its complaint, Boone Coleman asserted that the liquidated-damages provision was a penalty and also argued that it should have been awarded additional compensation based on work it performed to correct subsurface road problems and to perform revisions on the retaining wall and traffic signal. The trial court denied that relief and the appellate court affirmed, holding that "Boone Coleman did not follow the parties' unambiguous notice provisions to claim additional compensation. And the contract explicitly precluded recovery for additional costs related to subsurface conditions encountered by Boone Coleman." 2014-Ohio-2377, ¶ 4. Nevertheless, the dissenting opinion asserts, **"Boone Coleman already suffered a loss from performing additional work for which it was not paid"** and seemingly gives credence to Boone Coleman's claim that Piketon provided inaccurate site information.  It seems, then, that the dissent's insistence on adhering to its own conclusion, without regard to the facts of this case or the law controlling it, is where "frontier justice" comes into play.  In any event, Boone Coleman did not seek this court's review of the holdings that it had been paid properly, and it is therefore not discussed further in this opinion.

When evaluating the enforceability of a liquidated damages provision in a construction contract, the court must conduct its analysis prospectively, based on the per diem amount of the liquidated damages at the time the contract is executed, and not retrospectively, based on the total liquidated damages that ultimately accrue.

Liquidated damages are not deemed a penalty simply because a project consists of new construction of an improvement that did not exist previously and no proof of actual damages is required to enforce liquidated damages pursuant to such a contract.

140 Ohio St.3d 1451, 2014-Ohio-4414, 17 N.E.3d 598.

## ANALYSIS

### *Standard of Review for Contractual Liquidated-Damages Provisions*

{¶ 10} We review the interpretation of a contract, a question of law, de novo. *Arnott v. Arnott,* 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 14. Similarly, the question of whether a contract clause provides for liquidated damages or an unenforceable penalty is a question of law that we also review de novo. *Lake Ridge Academy v. Carney,* 66 Ohio St.3d 376, 380, 613 N.E.2d 183 (1993).

### *Substantive Law on Liquidated Damages*

{¶ 11} Simply stated, liquidated damages are damages that the parties to a contract agree upon, or stipulate to, as the actual damages that will result from a future breach of the contract. *Sheffield-King Milling Co. v. Domestic Science Baking Co.,* 95 Ohio St. 180, 183, 115 N.E. 1014 (1917).

{¶ 12} " 'The effect of a clause for stipulated damages in a contract is to substitute the amount agreed upon as liquidated damages for the actual damages resulting from breach of the contract, and thereby prevents [sic] a controversy

between the parties as to the amount of damages.' " *Dave Gustafson & Co., Inc. v. South Dakota*, 83 S.D. 160, 164, 156 N.W.2d 185 (1968), quoting 22 American Jurisprudence 2d, Damages, Section 235, at 321 (1965). " 'If a provision is construed to be one for liquidated damages, the sum stipulated forms, in general, the measure of damages in case of a breach, and the recovery must be for that amount. No larger or smaller sum can be awarded even though the actual loss may be greater or less.' " *Id.*, quoting Section 235 at 321. Put another way, "a liquidated damages clause in a contract is an advance settlement of the anticipated actual damages arising from a future breach." *Carrothers Constr. Co., L.L.C. v. S. Hutchinson,* 288 Kan. 743, 754, 207 P.3d 231 (2009).

{¶ 13} The common law viewed liquidated-damages provisions "with a gimlet eye," *Dist. Cablevision Ltd. Partnership v. Bassin*, 828 A.2d 714, 723 (D.C.App.2003), but that historical antipathy dissipated as parties to contracts, attorneys, and the courts recognized that such provisions serve valuable purposes.

{¶ 14} "Today the law does not look with disfavor upon 'liquidated damages' provisions in contracts. When they are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract, they are enforced." *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411, 68 S.Ct. 123, 92 L.Ed. 32 (1947). The modern rule is "to look with candor, if not with favor" upon liquidated-damages provisions in contracts when those provisions were "deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights." *Wise v. United States*, 249 U.S. 361, 365, 39 S.Ct. 303, 63 L.Ed. 647 (1919). *See also Bassin* at 724, quoting *Wilmington Trust Co. v. Aerovias de Mexico, S.A. de C.V.,* 893 F.Supp. 215, 218 (S.D.N.Y.1995) (" 'Relevant to this inquiry is the sophistication of the parties and whether both sides were represented by able counsel who negotiated the contract at arms length without the ability to overreach the other side' ").

**{¶ 15}** Part of the appeal of liquidated-damages provisions is that they allow the contracting parties to "protect themselves against the difficulty, uncertainty, and expenses that necessarily follow judicial proceedings when trying to ascertain damages." *Carrothers Constr. Co.,* 288 Kan. at 754, 207 P.3d 231. This benefit is particularly valuable when "actual damages are likely to be difficult to quantify in the event that the contract is breached." *Bassin*, 828 A.2d at 723. Liquidated-damages provisions thereby "promot[e] prompt performance of contracts" and "adjust[] in advance, and amicably, matters the settlement of which through courts would often involve difficulty, uncertainty, delay and expense." *Wise* at 366.

**{¶ 16}** Ohio has long recognized liquidated-damages provisions as valid and enforceable, *see Samson Sales,* 12 Ohio St.3d at 28, 465 N.E.2d 392, citing *Jones v. Stevens*, 112 Ohio St. 43, 146 N.E. 894 (1925); *Lange v. Werke*, 2 Ohio St. 519 (1853), as long as the provisions are not ones for penalties, *Samson Sales, id*. And therein lies the rub. "The difficult problem, in each case, is to determine whether or not the stipulated sum is an unenforceable penalty or an enforceable provision for liquidated damages." *Dave Gustafson & Co.,* 83 S.D. at 165, 156 N.W.2d 185.

**{¶ 17}** In addressing whether a contract includes a permissible liquidated-damages provision or an unenforceable penalty, one of our appellate courts has explained that a "penalty" is

"a sum inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default, or by way of security for actual damages which may be sustained by reason of nonperformance, and it involves the idea of punishment. A penalty is an agreement to pay a stipulated sum on breach of contract, irrespective of the damage sustained. Its essence is a payment of money stipulated as in terrorem of the offending party, *while the*

*essence of liquidated damages is a genuine covenanted pre-estimate of damages*. The amount is fixed and is not subject to change; however, if the stipulated sum is deemed to be a penalty, it is not enforceable and the nondefaulting party is left to the recovery of such actual damages as he can prove."

(Emphasis sic.) *Piper v. Stewart & Inlow*, 5th Dist. Licking No. CA-2530, 1978 WL 217430, *1 (June 14, 1978), quoting 22 American Jurisprudence 2d, Damages, Section 213, at 298 (1965).

{¶ 18} In *Samson Sales*, we set forth Ohio's tripartite test to determine whether a contractual provision should be considered a liquidated-damages provision or an unenforceable penalty. We held:

> Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.

*Samson Sales,* 12 Ohio St.3d 27, 465 N.E.2d 392, at syllabus.

{¶ 19} Valid and enforceable liquidated-damages provisions are those intended by the parties to give reasonable compensation for damages, but

provisions that impose amounts that are "manifestly inequitable and unrealistic" are deemed unenforceable penalties. *Id.* at 28. Since *Samson Sales*, we have reiterated its holding once, in *Lake Ridge Academy v. Carney,* 66 Ohio St.3d 376, 380, 613 N.E.2d 183 (1993), and have not departed from its teachings. This case requires that we consider our precedent in a context we have not previously addressed: public-works-construction contracts.

*Liquidated Damages in Public-Works-Construction Contracts*

{¶ 20} The benefits of liquidated-damages provisions in building and construction contracts are well documented. R. Harper Heckman & Benjamin R. Edwards, *Time is Money: Recovery of Liquidated Damages by the Owner*, 24 Constr.Lawyer 28, 29 (Fall 2004). The provisions create firm expectations and allow the parties to allocate damages caused by delays in completing construction. *Id.* The ability to agree about damages is particularly important in public-works-construction contracts because "[i]t is uniquely difficult to calculate damages to the general public interest caused by a contractor's breach of its agreement to provide public improvements." *Carrothers Constr. Co.,* 288 Kan. at 756, 207 P.3d 231.

{¶ 21} In a public-roadway-construction contract, each delay in completing the project adds to inconvenience, increased costs, and loss of use of the roadway. *Dave Gustafson & Co.,* 83 S.D. at 167, 156 N.W.2d 185. But " 'each day's delay, while unquestionably injurious, is injurious frequently in ways that are difficult to estimate.' " *Id.*, quoting 5 Williston on Contracts, Section 785, 733 (3d Ed.1961).

{¶ 22} We recognize that liquidated-damages provisions in public-construction projects play an important civic purpose in that they help foster timely completion of the project, thereby avoiding the loss of billions of taxpayers' dollars caused by contractors' delays. *See, e.g.,* Scott M. Tyler, *No (Easy) Way Out: "Liquidating" Stipulated Damages for Contractor Delay in Public Construction Contracts,* 44 Duke L.J. 357, 358-359 (1994); Christian, *Public Entities in Nevada Beware,* 12-OCT Nevada Lawyer 16. We are not alone in that recognition. The

Supreme Court and many state and federal appellate courts also recognize that liquidated-damages provisions in public contracts are particularly valuable given the unique difficulty in calculating the damages associated with a public contractor's breach of its promise to timely complete a public-improvement project. *See, e.g., Priebe & Sons,* 332 U.S. at 411, 68 S.Ct. 123, 92 L.Ed. 32 (recognizing that liquidated-damages provisions "serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable, as is the case in many government contracts"); *Hovas Constr., Inc. v. W. Line Consol. School Dist. Bd. of Trustees,* 111 So.3d 663, 666-667 (Miss.App.2013); *Carrothers Constr. Co.,* 288 Kan. at 756, 207 P.3d 231 (the unique difficulty of calculating damages when a contractor breaches a public-works contract "should be an important consideration in such cases and weigh favorably in finding a liquidated damages provision to be reasonable"); *Fortune Bridge Co. v. Dept. of Transp.,* 242 Ga. 531, 533-534, 250 S.E.2d 401 (1978) (noting that "damages flowing from the contractor's failure to complete [public] roadway and bridges in a timely fashion are, as a practical matter, incapable of proof"); *Brooks v. Wichita*, 114 F. 297, 299 (8th Cir.1902) (recognizing that liquidated-damages provisions are the only way for a city to obtain adequate compensation for breach of a public contract; the damages sustained by the public in such cases are not capable of "judicial ascertainment" because they are "too remote, conjectural, and speculative" to prove); *Dade Cty. Pub. Health Trust v. Romart Constr., Inc.*, 577 So.2d 636, 638, 669 (Fla.App.1991) (fact that public entity may have suffered no monetary loss from breach does not render liquidated-damages provision unconscionable, because public project was intended for public use, not for profit).

{¶ 23} We agree with those courts that find that "the protection of the public interest is a proper consideration in determining [the] validity of a liquidated damages provision." *Carrothers Constr. Co.*, 288 Kan. at 756, 207 P.3d 231. The Ohio General Assembly requires that every state-funded public-improvement-

construction contract include a liquidated-damages provision. R.C. 153.19. Many states have similar requirements. *Dave Gustafson & Co.*, 83 S.D. at 166, 156 N.W.2d 185; *Fortune Bridge Co.,* 242 Ga. at 534, 250 S.E.2d 401; *see also Bale Contracting, Inc. v. Westerville,* 7 Ohio App.3d 271, 272, 455 N.E.2d 517 (10th Dist.1982) (recognizing the materiality of a completion date in a public-works-construction project and that a bid for such a project is incomplete when it fails to specify the time for performance, citing R.C. 153.19).

{¶ 24} With these principles in mind, we turn to the appellate court's opinion in this case.

*The Appellate Court's Analysis of the Liquidated-Damages Provision*

{¶ 25} In considering whether the liquidated-damages provision in this case constituted an unenforceable penalty, the court of appeals properly applied the first and third parts of the test in *Samson Sales*, 12 Ohio St.3d 27, 465 N.E.2d 392. The appellate court recognized that "the damages incurred as a result of a delay [by Boone Coleman in completing the project] were uncertain as to amount and difficult to prove" and that "the plain and unambiguous language of the liquidated damages clause is consistent with the conclusion that the parties intended that damages in the amount of $700 per day would follow the contractor's breach of the project completion deadline." 2014-Ohio-2377, 13 N.E.3d 1190, ¶ 38 and 39, citing *Samson Sales*. But the appellate court concluded that the provision did not pass the second prong of the *Samson Sales* test. The second prong requires a court reviewing a liquidated-damages provision to consider whether "the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties." *Samson Sales*, at syllabus.

{¶ 26} Even though the appellate court had already determined that the provision reflected the parties' intentions, the appellate court focused solely on the aggregate amount of the penalty, $277,900, in relation to the total value of the

contract, $683,300. *See* 2014-Ohio-2377, ¶ 42. Only after finding that the liquidated-damages aggregate award constituted a third of the total contract price did the court determine that *the application* of the provision rendered it an unenforceable penalty. 2014-Ohio-2377, ¶ 40. For several reasons, it was error to do so.

**{¶ 27}** First, the appellate court relied heavily on a decision of one of its sister courts, *Harmon v. Haehn*, 7th Dist. Mahoning No. 10 MA 177, 2011-Ohio-6449. But *Harmon* is wholly distinguishable here.

**{¶ 28}** Given "the wide range and variety of contracts, and of their subject-matter, it is sometimes difficult to determine whether the terms thus agreed upon in advance actually provide for damages or for a penalty." *Sheffield-King Milling Co.*, 95 Ohio St. at 183, 115 N.E. 1014. *See also Lange*, 2 Ohio St. at 533 (noting that in evaluating a liquidated-damages provision, "Arbitrary rules can not help us, and judicial decisions are of less value than upon most other questions, as each case depends so peculiarly on its own circumstances"). Thus, when courts review liquidated-damages provisions, they often look to similar provisions in contracts that govern similar subject matter. *See, e.g., Kurtz v. W. Property, L.L.C.*, 10th Dist. Franklin No. 10AP-1099, 2011-Ohio-6726, ¶ 33 (in case involving delay in sale of real estate, cases involving breaches in other contexts are "readily distinguishable").

**{¶ 29}** Here, *Harmon* is of limited value because it arose from a private commercial real estate lease rather than a public-works-construction contract. 2011-Ohio-6449, ¶ 1. That distinction is particularly relevant because the actual damages at issue in *Harmon* were far easier to quantify than those at issue here.

**{¶ 30}** Moreover, the *Harmon* decision involved a liquidated-damages provision that contemplated a lump sum. Piketon and Boone Coleman did not contract for a lump sum. Rather, the parties contracted for a per diem measure of damages which, as Chief Justice Marshall recognized, is more likely to be an

enforceable liquidated-damages provision than an unenforceable penalty: "[T]he agreement to pay a specified sum weekly during the failure of the party to perform the work, partakes much more of the character of liquidated damages than the reservation of a sum in gross." *Tayloe v. T. & S. Sandiford*, 20 U.S. 13, 18, 5 L.Ed. 384 (1822). In failing to recognize this distinction, the appellate court committed its second error.

{¶ 31} More importantly, the appellate court's myopic focus on the reasonableness of the *total amount* of liquidated damages in application, rather than on the reasonableness of the *per diem* amount in the contract terms, was not proper. The correct analysis looks at whether it was conscionable to assess $700 *per day* in liquidated damages for each day that the contract was not completed rather than looking at the aggregate amount of the damages awarded. *Accord Carrothers Constr. Co.*, 288 Kan. at 759, 207 P.3d 231.

{¶ 32} Although per diem amounts vary greatly in the case law, courts have upheld liquidated-damages provisions in public-construction contracts with per diem amounts similar to those at issue here. *See, e.g., Sec. Fence Group, Inc. v. Cincinnati*, 1st Dist. Hamilton No. C-020827, 2003-Ohio-5263 (enforcing a per diem liquidated-damages provision in a public-bridge-replacement project that imposed $600 per day); *see also Carter Steel & Fabricating Co. v. Ohio Dept. of Transp.*, 102 Ohio Misc.2d 1, 721 N.E.2d 1115 (Ct. of Cl.1999) (impliedly recognizing the validity of a liquidated-damages per diem provision in bridge-construction project that imposed $600 in liquidated damages per day, but refusing to enforce it against subcontractor who had no control over delay); *Hovas Constr.*, 111 So.3d at 667 (upholding as reasonable a $500 per diem assessment of liquidated damages in public-construction contract); *Carrothers Constr. Co.*, 288 Kan. at 759, 207 P.3d 231 ($850 per diem assessment of liquidated damages held reasonable in public-construction contract). In fact, courts have upheld far greater amounts of per diem damages in construction contracts. *See, e.g., Dade Cty. Pub. Health Trust,*

577 So.2d at 638 (upholding as "perfectly reasonable" a liquidated-damages provision imposing $2,500 in damages per day in public-construction project for medical facility); *Bethlehem Steel Corp. v. Chicago*, 350 F.2d 649 (7th Cir.1965) (upholding a liquidated-damages provision imposing $1,000 in damages per day in public-construction project for elevated highway, even though contractor's delay did not prevent highway from opening to public on date scheduled). *See also* Unruh & Worden, 34 Santa Clara L.Rev. 1, at fn. 1 (in commercial construction contracts, "a typical *per diem* liquidated damages provision might provide that the general contractor pay the owner/developer $10,000 for each calendar day" of delay).

{¶ 33} Moreover, the per diem liquidated damages imposed by the contract between Piketon and Boone Coleman reflect the Ohio Department of Transportation's 2013 Construction and Material Specifications. Those specifications not only require liquidated damages be deducted from any sum owed the contractor for each day by which the contractor exceeds the completion date, but set out the specific amount of the per diem damages.[3] The per diem damages are thus consistent with Ohio public policy.

---

[3] The Ohio Department of Transportation's 2013 document entitled "Construction and Material Specifications" is available at http://www.dot.state.oh.us/Divisions/ConstructionMgt /Specification%20Files/2013%20CMS%2011142012%20FINAL.PDF. Section 108.07 provides:

> **Failure to Complete on Time.** If the Contractor fails to complete the Work by the Completion Date, then the Director, if satisfied that the Contractor is making reasonable progress, and deems it in the best interest of the public, may allow the Contractor to continue in control of the Work. The Department will pay the Contractor for Work performed on the Project less any liquidated damages incurred.

(Boldface sic.)

The 2013 schedule of liquidated damages, found in Table 108.07-1, provides that the amount of liquidated damages to be deducted for each calendar day of an "overrun in time" varies depending on the original amount of the contract. For contracts between 0 and $500,000, the amount of per diem liquidated damages is $500; for contracts between $500,000 and $2,000,0000, the amount of per diem liquidated damages is $1,000; for contracts between $2,000,0000 and $10,000,000, the amount of per diem liquidated damages is $1,500; for contracts between

**{¶ 34}** Finally and most importantly, we note that the appellate court stated that its conclusion resulted from viewing "the contract as a whole *in its application.*" (Emphasis added.) 2014-Ohio-2377, ¶ 3. The use of the phrase "in its application" is not part of our test from *Samson Sales.* The appellate court's use of this invented perspective resulted in a distorted analysis of our precedent.

**{¶ 35}** We reaffirm that Ohio law requires a court, when considering a liquidated-damages provision, to "examine it in light of what the parties knew at the time the contract was formed." *Jones,* 112 Ohio St. 43, 146 N.E. 894, at paragraph one of the syllabus; *Miller v. Blockberger,* 111 Ohio St. 798, 146 N.E. 206 (1924), paragraph one of the syllabus; *Sec. Fence Group,* 2003-Ohio-5263, ¶11. *Accord Priebe & Sons,* 332 U.S. at 412, 68 S.Ct. 123, 92 L.Ed. 32. "If the provision was reasonable *at the time of formation* and it bears a reasonable (not necessarily exact) relation to actual damages, the provision will be enforced." (Emphasis added.) *Lake Ridge Academy* at 382.

**{¶ 36}** This prospective or "front end" analysis of a liquidated-damages provision focuses on the reasonableness of the clause at the time the contract was executed rather than looking at the provision retrospectively, i.e., ascertaining the reasonableness of the damages with the benefit of hindsight after a breach. *See generally* Heckman & Edwards, 24 Constr.Law. at 30-31; *Hovas Constr.,* 111 So.3d at 668-669 (Maxwell, J., concurring); *Carrothers Constr. Co.,* 288 Kan. 743, 207 P.3d 231, at paragraph nine of the syllabus. The prospective approach properly focuses on whether (1) the parties evaluated, at the time of contract formation, the probable loss resulting from delay in completing the construction, (2) the parties clearly intended to use liquidated damages in case of a delay because actual

---

$10,00,000 and $50,000,000, the per diem amount is $2,600; and for contracts over $50,000,000, the per diem amount is $3,200.

damages would be difficult to ascertain, and (3) the parties reached an agreement as to a per diem amount for delays. *Carrothers Constr. Co.* at 757. *See also Hutton Contracting Co., Inc. v. Coffeyville,* 487 F.3d 772, 781 (10th Cir.2007), quoting *Kelly v. Marx*, 428 Mass. 877, 881, 705 N.E.2d 1114 (1999) (recognizing that prospective analysis " 'resolve[s] disputes efficiently by making it unnecessary to wait until actual damages from a breach are proved' " and " 'eliminates uncertainty and tends to prevent costly future litigation' "); William Schwartzkopf & John J. McNamara, *Calculating Construction Damages*, Section 13.02, at 257-258 (2d Ed.2015) ("The reasonableness of the forecast or estimate [in a liquidated-damages provision] is usually determined in view of the facts known *at the time of contracting*, and not at the time of the breach or delayed completion" [emphasis sic]).

{¶ 37} Here, the appellate court improperly engaged in retrospective analysis, i.e., it looked, with hindsight, to the aggregate application of the per diem liquidated damages to conclude that the provision was unconscionable. But it did not determine that the per diem amount was unconscionable at the time the parties entered into the contract. The question whether the liquidated-damages provision is conscionable "must be viewed by the court from the standpoint of the parties at the time of the contract, and not *ex post facto* when the litigation is up for trial. Contracts are always so construed and a stipulation for liquidated damages is no exception." *Jacobs v. Shannon Furniture Co.*, 22 Ohio C.D. 51, 53, 1910 WL 1170 (1910), citing *Sun Printing & Pub. Assn. v. Moore,* 183 U.S. 642, 672, 22 S.Ct. 240, 46 L.Ed. 366 (1902), and *Knox Rock-Blasting Co. v. Grafton Stone Co.,* 64 Ohio St. 361, 266, 60 N.E. 563 (1901). Moreover, when the appellate court determined that the award was an unenforceable penalty because the amount was "so unreasonably high and so disproportionate to the consideration paid," 2014-Ohio-2377, ¶ 40, the court failed to fully consider that the amount was large only because

Boone Coleman failed to complete the project for more than a year after the agreed-upon completion date, with full awareness of the consequences.

**{¶ 38}** By the appellate court's reasoning, the same provision might have been enforceable if Boone Coleman's delay had been briefer, e.g., two days, two weeks, or even two months, but not so long as to accrue the significant damages that arose here. It is a perverse rule of law to hold that a court can relieve a breaching party of the consequences it agreed to by refusing to enforce a per diem liquidated-damages provision solely because the breach was an egregious one. We decline to adopt that rationale and vacate the judgment of the appellate court in this cause.

**{¶ 39}** We remind our appellate courts that in engaging in prospective analysis, the appellate court's role is not to determine what the parties should have contracted for based on the court's understanding of the damages after the breach. *Lake Ridge Academy*, 66 Ohio St.3d at 382, 613 N.E.2d 183. This court has made clear for over 150 years that judges have no more power to disregard a valid liquidated-damages provision than they do to disregard any other contractual provision. *Lange*, 2 Ohio St. at 533; *see also Knox Rock-Blasting Co.* at 367-368. The proper course is to enforce contracts according to their plain meaning and "not to undertake to be wiser than the parties." *Jones*, 112 Ohio St. at 56, 146 N.E. 894. "It is certainly not incumbent on the appellate courts * * * to change the contracts of people, after the fact, in the name of public policy." *Court Rooms of Am., Inc. v. Diefenbach,* 425 N.E.2d 122, 124 (Ind.1981).

> "The parties themselves best know what their expectations are in regard to the advantages of their undertaking and the damages attendant on its failure, and when they have mutually agreed on the amount of such damages in good faith and without illegality, it is as

much the duty of the court to enforce that agreement as it is the other provisions of the contract."

*Sheffield-King Milling Co.*, 95 Ohio St. at 185, 115 N.E. 1014, quoting *Knox Rock-Blasting Co.* at 368.

## CONCLUSION

{¶ 40} Benjamin Franklin advised us to remember that "time is money." *United States v. One 1971 Corvette Stingray*, E.D.Pa. No. 89-5398, 1990 WL 4374, *1 (Jan. 18, 1990), citing Benjamin Franklin, *Advice to a Young Tradesman* (1748). Boone Coleman would have done well to follow that advice.

{¶ 41} Boone Coleman entered a contract that required it to perform the project within 120 days. It took four times that long to do so. It may not avoid the result of the valid liquidated-damages provision it negotiated through able counsel. "There is no sound reason why persons competent and free to contract may not agree upon this subject [of liquidated damages] as fully as upon any other, or why their agreement, when fairly and understandingly entered into with a view to just compensation for the anticipated loss, should not be enforced." *Wise*, 249 U.S. at 365, 39 S.Ct. 303, 63 L.Ed. 647.

{¶ 42} The appellate court erred in its use of a retrospective analysis to find that the total amount of damages awarded to Piketon was so unreasonable as to constitute a penalty, and in failing to focus on the per diem nature of the liquidated damages. Accordingly, we vacate the judgment of the Fourth District Court of Appeals and remand the cause to that court to reconsider the enforceability of the liquidated-damages provision in light of this opinion.

Judgment vacated
and cause remanded.

O'NEILL, J., concurs.

18

O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur in judgment only.

PFEIFER, J., dissents.

_____

**KENNEDY, J., concurring.**

{¶ 43} I agree with the majority opinion. However, I would exclude the first paragraph of the majority's conclusion.

{¶ 44} Therefore, I respectfully concur.

O'DONNELL, J., concurs in the foregoing opinion.

_____

**PFEIFER, J., dissenting.**

{¶ 45} We should dismiss this case as having been improvidently accepted and allow the court of appeals decision to stand. That court reached a sound and proper conclusion that is fair to both parties. Furthermore, no new legal issue is at stake.

{¶ 46} Instead this court has taken a bad situation and made it worse. Boone Coleman already suffered a loss from performing additional work for which it was not paid. On top of that, this court now determines that Boone Coleman must pay a penalty because it didn't complete the contract on time, never mind that Boone Coleman claims that part of the problem was that Piketon provided inaccurate site information. This is akin to frontier justice: we do it because we can, not because it makes sense.

{¶ 47} Barring a dismissal, the sensible approach to this case, the approach taken by the court of appeals, is to declare the liquidated-damages clause to be unreasonable and disproportionate. Equities do matter—even in a contract case. Given the circumstances of this case, which include Piketon allegedly providing inaccurate site plans to Boone Coleman, the court of appeals got it right. It disallowed Boone Coleman's requests for additional payment because they were

not properly submitted and refused to enforce the liquidated-damages clause because it was so unreasonable and disproportionate as to amount to a penalty.

{¶ 48} Because the court is neither dismissing the case nor affirming the court of appeals, I dissent.

_____

Stephen C. Rodeheffer and John A. Gambill, for appellee.

Kegler Brown Hill & Ritter, L.P.A., Eric B. Travers, and Timothy A. Kelley, for appellant.

Bricker & Eckler, L.L.P., Jack R. Rosati Jr., and Adam F. Florey, urging reversal for amici curiae, County Commissioners Association of Ohio, Ohio Municipal League, Ohio School Boards Association, and Ohio Township Association.

_____