[Cite as *Drake Townhomes, L.L.C. v. Woodberry*, 2017-Ohio-6968.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DRAKE TOWNHOMES, LLC, | : | APPEAL NO. C-160632 |
| | | TRIAL NO. 14CV-11032 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | : | |
| DANIELLA WOODBERRY, | : | |
| Defendant-Appellant, | : | |
| and | : | |
| KENNETH WILLIAMS, | : | |
| Defendant. | : | |

Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed from is: Affirmed as Modified

Date of Judgment Entry on Appeal: July 26, 2017

*Geoffrey A. Modderman,* for Plaintiff-Appellee,

*John Rebel*, for Defendant-Appellant.

**CUNNINGHAM, Presiding Judge.**

{¶1} Defendant-appellant Daniella Woodberry[1] appeals from the judgment of the Hamilton County Municipal Court in favor of plaintiff-appellee Drake Townhomes, LLC, on Drake Townhomes' complaint to recover damages due under a residential lease upon Woodberry's breach. The trial court awarded damages for two months' unpaid rent and five days of late fees for each month, offset those damages with a security deposit, and entered judgment for Drake Townhomes in the amount of $850.

{¶2} We find no merit to Woodberry's argument that the trial court misapplied provisions of the Landlord-Tenant Act when it determined that she owed two months' rent. Further, we reject Woodberry's argument that a stipulated-damages provision in a lease for late fees is a per se unenforceable penalty. Finally, for the reasons that follow, we hold that it would be unconscionable in this case to enforce a provision for late fees related to unpaid rent for the month after Woodberry had vacated the apartment. Thus, we affirm the trial court's judgment as modified.

## I. Background Facts and Procedure

{¶3} The facts are largely undisputed. In February 2007, Woodberry entered into a lease agreement with Drake Townhomes under which Drake Townhomes agreed to lease to Woodberry a residence on Mayfair Street in Cincinnati for an initial term ending the following year, in exchange for a monthly rent of $670 and a $670 security deposit. Monthly rental payments were due on or

---

[1]The complaint and other original papers erroneously identified Woodberry as "Danielle Woodbury."

2

before the first day of the month, and late rent payments not postmarked by the first day of the month incurred a $10 late fee for each day late, with a maximum of $150.[2]

{¶4} Except for circumstances not relevant here, the lease agreement provided for the automatic renewal of the lease on a month-to-month basis except upon 30 days' written notice of either the tenant's or landlord's desire to terminate. The lease specified that if either party provided the notification after the first of the month, the notice would not take effect until the first day of the subsequent month.

{¶5} Further, the lease allowed for a change in the terms and conditions of the lease. Paragraph 43 of the lease provided:

> Changing Terms and Conditions of Lease
>
> Landlord must give Tenant at least 30 days [of] notice before the lease term ends. If any terms and conditions are changed, Tenant has 10 days from the date of receiving the notice to decide to accept or not accept the changes.
>
> If Tenant does not give the required notice within the 10 day period, the lease renews under the new terms and conditions given by the Landlord.

{¶6} Woodberry lived at the unit with her two sons. Her rent increased to $680 in 2013, after Drake Townhomes had given written notification of a change in the terms of tenancy. Of importance to this appeal, on March 27, 2014, Woodberry received a written "Notice to Change Terms of Tenancy" indicating that her total rental payment would be increased by $10 per occupant for a "water/sewer utility

---

[2] We accept the parties' agreement on this issue, even though we do not read the lease to contain a cap of $150.

fee," effective May 1, 2014. The notice form gave Woodberry the option of checking one box to indicate the acceptance of the $30 increase and the continuation of the month-to-month lease, or a second box that provided a 30-day notice to terminate the lease and contained space to fill in a move out date.

{¶7}  Woodberry checked the box indicting her desire to give 30 days' notice to terminate the lease and indicated that she would move out by June 1. Woodberry signed the notice and mailed it to Drake Townhomes with a check for rent in the amount of $680. The envelope was postmarked on May 10, but Drake Townhomes did not receive it until May 19 because Woodberry addressed it incorrectly.

{¶8}  On May 12, before receiving Woodberry's rent for May and notice to terminate, Drake Townhomes served Woodberry with a three-day notice to vacate for the nonpayment of rent and filed this action for eviction and money damages. Woodberry received the three-day notice, but believing that her rent check had been lost in the mail, she stopped payment on the first check and sent a second rent check in the amount of $680 that Drake Townhomes received on May 22.

{¶9}  After receipt of the checks, Drake Townhomes returned them to Woodberry along with a handwritten note indicating that if she moved out by June 1 "the eviction" would be dismissed.  Scott Peck, the agent for Drake Townhomes, testified that the notation concerning the dismissal of the eviction was consistent with a conversation he had with Woodberry in which he told her that he would dismiss the eviction if she moved out by June 1. Woodberry, however, testified that Peck told her that she "could disregard the eviction" and that she would not "owe him anything" if she moved out by June 1. She claimed that based on his representations, she moved out June 1, instead of taking her time to move out during the month of June.

4

{¶10} Woodberry vacated the property and returned the keys on June 1, 2014. Drake Townhomes entered the unit in mid-June to ready it for a new tenant and rerented the apartment beginning July 1.

{¶11} Drake Townhomes dismissed the eviction claim but continued with the litigation of the damages claim for past due rent and late fees. Eventually Drake Townhomes obtained a default judgment against Woodberry and Kenneth Williams, who was also a signatory to the lease and had been named as a defendant, in the amount of $910, as neither had answered or otherwise responded to the complaint.

{¶12} Woodberry successfully moved to set aside the default judgment after filing an affidavit that detailed the basis of her belief that Drake Townhomes was going to dismiss the entire action. She then answered and counterclaimed.

{¶13} At a trial before a magistrate, Woodberry maintained that she believed that the entire action would be dismissed if she moved out by June 1. She also argued that the application of R.C. 5321.17 obviated her duty to pay June rent, the late-fee provision was an unenforceable penalty, and an award of damages was contrary to R.C. 5321.14, which relates to unconscionable clauses in leases.

{¶14} The magistrate found for Drake Townhomes and against Woodberry on the claims and counterclaims. The magistrate determined that Woodberry owed rent of $710 for both May and June. The magistrate further determined that the lease allowed for an award of late fees, and that an award was "appropriate" for both May and June given Woodberry's failure to pay rent. But after finding that "the fees called for in the lease of $10 per day with a maximum of $150 [wa]s not equitable," and that an amount of $50 per month was "equitable," the magistrate awarded $50 per month, for a total of $100 in late fees. The magistrate rendered a decision in

favor of Drake Townhomes for $850, which it computed after crediting Woodberry for her security deposit.

{¶15} The trial court then overruled Woodberry's objections to the magistrate's decision and adopted the magistrate's decision by entry. Woodberry now appeals, raising three assignments of error.

## II. Analysis

{¶16} In her first assignment of error, Woodberry maintains that the trial court's award of June rent was contrary to R.C. 5321.17(B). This provision is a subdivision of R.C. 5321.17, which is the part of the Landlord-Tenant Act that sets forth the minimum notice required to "terminate or to fail to renew" periodic tenancies. As provided by R.C. 5321.17(B), the minimum notice is 30 days for a month-to-month tenancy such as Woodberry's. Although Woodberry does not challenge the determination that she did not provide notice in time to avoid an obligation for June rent, she contends that she did not have to give sufficient notice because Drake Townhomes' notice of increase in rent was a 30-day notice of termination or nonrenewal as contemplated by R.C. 5321.17(B).

{¶17} Woodberry's argument, however, ignores the language of the March notice. In the notice, Drake Townhomes announced a change in a term of the tenancy, namely the amount of rent, as contemplated by paragraph 43 of the lease. Conversely, R.C. 5321.17(B) refers to a notice to quit the tenancy—either by termination or nonrenewal of the lease. Because Drake Townhomes' March notice was not a notice of termination or nonrenewal of the tenancy, Woodberry has failed to demonstrate that the award of June rent was contrary to R.C. 5321.17(B) and, therefore, we overrule the first assignment of error.

{¶18}   In her second assignment of error, Woodberry maintains that the trial court's award of June rent was erroneous because her nonpayment of rent was a breach of the lease that obviated her duty to give 30 days' notice to end the tenancy. In support of her argument, she cites R.C. 5321.17(D).  This provision provides

> This section [on notice] does not apply to a termination based on the breach of a condition of a rental agreement or the breach of a duty and obligation imposed by law, except that it does apply to a breach of the obligation imposed on a tenant by division (A)(9) of section 5321.05 of the Revised Code.

{¶19}   As applied in this case, R.C. 5321.17(D) would allow Drake Townhomes to proceed with an eviction without providing the statutorily required 30-day notice of termination because Woodberry had breached a condition of her lease by her nonpayment of rent.  Woodberry misapplies the language of the statute when she contends that it eliminates her duty to provide the requisite notice.

{¶20}   Because Woodberry's nonpayment of rent did not obviate her duty to give 30 days' notice to terminate the tenancy, she failed to demonstrate the error assigned.  Thus, we overrule the second assignment of error.

{¶21}   In her third assignment of error, Woodberry argues that the trial court erred by awarding late fees.  She first contends that under contract law, a provision in a lease allowing and specifying an amount of damages for the late payment of rent is always a penalty and unenforceable.  And, she continues, because the late-fee provision was unenforceable, Drake Townhomes could not recover late-fee damages without proof of actual damages.  Here, Drake Townhomes only presented general evidence of damages from her failure to pay on time.  Therefore, she concludes that

because Drake Townhomes did not present any specific evidence of actual damages, the trial court's decision was not supported by competent, credible evidence and was "arbitrary."

{¶22} We must first address Woodberry's argument that late-fee provisions in leases allowing stipulated damages are per se unenforceable penalties. When interpreting contract provisions that specify damages, Ohio law draws a distinction between liquidated-damages clauses, which are enforceable, and penalty clauses, which are not. In *Sampson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St.3d 27, 465 N.E.2d 392 (1984), the Ohio Supreme Court set forth the current test to determine whether a contract provision should be characterized as a liquidated-damages clause or an unenforceable penalty:

> Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that the damages in the amount stated should follow the breach thereof.

*Id.* at syllabus, following *Jones v. Stevens*, 112 Ohio St. 43, 146 N.E. 894 (1925), paragraph two of the syllabus.

{¶23} The Supreme Court recently emphasized the general rules with respect to stipulated-damages provisions. To that end, a "per diem measure of damages * * * is more likely to be an enforceable liquidated-damages provision than an unenforceable penalty," and in determining the reasonableness of the amount of liquidated damages, a court must look at the per diem amount, and not to the aggregate amount of liquidated damages in application. *Boone Coleman Constr., Inc. v. Village of Piketon*, 145 Ohio St.3d 450, 2016-Ohio-628, 50 N.E.3d 502, ¶ 30 and 31. Further, when a provision is upheld as a liquidated-damages provision, the measure of damages for a breach will be based on that stipulated amount, absent any other valid defense; if the provision is rejected as a penalty, the recovery of damages is limited to the amount of actual damages proven. *See id.* at ¶ 12, quoting *Dave Gustafson & Co., Inc. v. South Dakata*, 83 S.D. 160, 164, 156 N.W.2d 185 (1968), quoting 22 American Jurisprudence 2d, Damages, Section 235, at 321 (1965).

{¶24} Woodberry contends that a stipulated-damages clause for the late payment of rent is an unenforceable penalty as a matter of law in a residential lease. But the case she cites, *Wadsworth v. Starcher*, 11 Dist. Ashtabula No. 97-A-0054, 1998 WL 553160 (June 26, 1998), holds the opposite (upholding a late-fee award of $100).

{¶25} This court has not squarely addressed the issue, but we can discern nothing in Ohio's Landlord-Tenant Act that forbids the use of a valid liquidated-damages clause with respect to late fees in a residential lease. *See* R.C. 5321.06 ("A landlord and tenant may include in a rental agreement any terms and conditions, including any term relating to rent, the duration of an agreement, and any other

provisions governing the rights and obligations of the parties that are not inconsistent with or prohibited by Chapter 5321 of the Revised Code or any other rule of law."). We note that at least one municipality in Ohio has enacted a code provision creating a maximum monthly amount for any fee for late payment of rent, which suggests the provisions are not per se unenforceable. *See* Cleveland Municipal Code 375.02(c).

{¶26} Although Woodberry is correct that ordinarily damages must be proved by evidence, her argument ultimately fails because the parties to a residential lease may obviate this requirement by agreeing to a liquidated-damages clause, and she does not present any argument as to why the late fee in this case was a penalty, and not an enforceable liquidated-damages clause, in light of the *Samson Sales* factors. Thus, Woodberry has failed to demonstrate that the trial court erred by awarding late-fee damages that were not based on evidence of actual damages.

{¶27} Woodberry's next argument implicates R.C. 5321.14(A), which provides:

> If the court as a matter of law finds a rental agreement, or any clause thereof, to have been unconscionable at the time it was made, it may refuse to enforce the rental agreement or it may enforce the remainder of the rental agreement without the unconscionable clause, or it may so limit the application of an unconscionable clause as to avoid any unconscionable result.

{¶28} Whether a term is unconscionable is an issue of law that this court reviews de novo, considering the setting, purpose and effect of the clause. *See* R.C. 5321.14(A) and (B).

{¶29} We address this issue with the understanding that the trial court accepted in part Woodberry's argument that an award of late fees was subject to the limitations of R.C. 5321.14(A), and it found the $10 per day late-fee clause unenforceable after the fifth day of the month. Drake Townhomes did not cross-appeal on this issue, and instead took the position that the magistrate's decision adopted by the trial court was "supported by the evidence."

{¶30} In light of Drake Townhomes' position on this issue on appeal, which concedes that Woodberry had established both procedural and substantive unconscionability, we conclude upon our de novo review that any award of late fees for June would be unconscionable. As established at trial, Drake Townhomes had indicated around mid-May that it would not accept rents, Woodberry moved out on the agreed-upon date based on her belief that she would not owe any rent or late fees for June, Drake Townhomes was able to occupy the apartment in mid-June to make it ready for the July tenant, and Drake Townhomes did not incur any water-usage fees for the apartment in June that were charged as rent because Woodberry had moved out. To enforce the challenged term of the lease with respect to June late fees would be grossly unfair in the particular circumstances of this case. Thus, we sustain Woodberry's third assignment of error in part and overrule it in part.

### III. Conclusion

{¶31} Accordingly, finding error in the trial court's award of late fees related to June rent, we modify the trial court's judgment to reflect a judgment for Drake Townhomes in the amount of $800, and we affirm the judgment as modified.

Judgment affirmed as modified.

MYERS and MILLER, JJ., concur.

11

Please note:

The court has recorded its own entry on the date of the release of this opinion.