| | |
|---|---|
| VENTECH SOLUTIONS, INC. | Case No. 2017-00628JD |
| Plaintiff/Counter Defendant | Judge Dale A. Crawford |
| v. | <u>DECISION</u> |
| OHIO ATTORNEY GENERAL | |
| Defendant/Counter Plaintiff | |

{¶1} In the Court's November 18, 2019 "Interim Decision" it found that Ventech Solutions, Inc. (Ventech) substantially breached the Agreement with the Ohio Attorney General's Office (AGO) and is liable for damages resulting from its breach. The Court further advised the parties that "the AGO should be entitled to the entire amount it paid on a contract which produced nothing but cost $12.5 million. However, the Court must consider the damage limitation provisions contained in the Agreement and Amendment 10." The Court further requested the parties to submit supplemental briefs on the subject of damages which was not fully briefed in the initial briefing.

{¶2} In general when a Court awards damages for breach of a contract it should apply general contract principles. The Supreme Court in *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Authority*, 78 Ohio St.3d 353, 361-362 (1997), set forth several principles a court is to follow when it is making the legal interpretation of written instruments.

> "The cardinal purpose for judicial examination of any written instrument is
> to ascertain and give effect to the intent of the parties * * *. The intent of
> the parties to a contract is presumed to reside in the language they chose
> to employ in the agreement * * * 'common words appearing in written
> instrument will be given their ordinary meaning unless manifest absurdity

results, or unless some other meaning is clearly evidenced from the face

of overall content of the instrument * * *.'  Technical terms will be given

their technical meaning unless a different intention is clearly expressed

* * *.

"Although these rules contain a measure of flexibility in their application,

they are designed only to ascertain the parties' intent.  It is not the

responsibility or function of this Court to rewrite the parties' contract in

order to provide for a more equitable result.  A contract does not become

ambiguous by reason of the fact that in its operation it will work a hardship

upon one of the parties thereto * * *."

*See also Saunier v. Stark Truss Co., Inc.*, 5th Dist. No. 2015CA00202, 2016-Ohio-3162, ¶ 12; *Provident Manor Homeowner v. Rogers*, 12th Dist. No. CA2011-10-189, 2012-Ohio-3532, ¶ 27.

{¶3} The Tenth District Court of Appeals has defined what is ambiguous. "Contractual language is 'ambiguous' only when its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations.  *Geczi v. Lifetime Fitness*, 10th Dist. No. 11-AP-950, 2012-Ohio-2948, ¶ 17.  In *Covington v. Lucia*, 151 Ohio App.3d 409, 2003-Ohio-346, ¶ 18-19 (10th Dist.), the Tenth District held:

"* * * if an ambiguity exists in a contract, then it is proper for a court to

consider 'extrinsic evidence' i.e. evidence outside the four corners of the

contract, in determining the parties intent * * *.  However, courts may not

use extrinsic evidence to create an ambiguity; rather the ambiguity must

be patent, i.e. apparent on the face of the contract."

{¶4} "Common words are to be given their ordinary meaning unless manifest absurdity results or unless some other meaning is clearly evidenced from the face or

overall contents of the instrument." *Shifrin v. Forest City Enterprises*, 64 Ohio St.3d 635, 638 (1992). *See also Alexander v. Buckeye Pipe Line Company*, 53 Ohio St.2d 241 (1978), ¶ 2 of the syllabus; *Falcone Bros, Inc. v. Pawmew, Inc.*, 5th Dist. No. 2016CA00209, 2017-Ohio-6958, ¶ 18. If an undefined term does not have a plain and ordinary meaning it is impermissible for a court to "resort to construction of that language." *Nationwide Mutual Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995).

{¶5} There are situations in business relations wherein contracting parties find it necessary to provide for contract limitation clauses which would have the effect of altering the traditional methods of computing damages. Limitations can come in the form of liquidated damages, or as in this case, liquidated damages with a cap on total damages. Software contracts create difficult issues when contractual damages are contemplated. The contracts are long in duration; with numerous unplanned delays; and, with no guaranteed results. Sometimes newly customized software doesn't work after years of planning, preparation and attempted implementation. Thus, it is traditional in the software industry to provide for no consequential damages; liquidated damages; and, a cap on damages. *See Irth Solutions v. Atlantic Infratrac, LLC*, W.D.N.Y No. 19-CV-6174-FPG (11/14/19 Decision).

{¶6} It appears to the Court that the parties were fully aware of the industry damage issues when the Agreement was negotiated and signed. The RFP provided for a cap of four times the "not to exceed fixed price of the contract." (Ex. A, at p. 115.) (NOTE: The RFP also provided for "other damages.") The Agreement provided for liquidated damages (Ex. D., Section IX(A)) and limitations on liability. *Id.* at XVIII(C).

> "As a general rule, the parties are free to enter into contracts that contain provisions which apportion damages in the event of default. The right to contract freely with the expectation that the contract shall endure according to its terms is as fundamental to our society as the right to write

and to speak without restraint. Responsibility for the exercise, however improvident, of that right is one of the roots of its preservation. (Internal cites omitted.)

*Kurtz v. Western Property, LLC*, 10th Dist. No. 10AP-1099, 2011-Ohio-6726 at ¶ 26.

{¶7} The Court has previously set forth the difficult and long history of this failed project. The project started in December 2012 and continued with twelve contractual amendments before it was terminated by the AGO in 2017. However, knowing full well that the project was in doubt in 2016, the AGO agreed to Amendment 10 which modified the Agreement's original liquidated damage cap provision set forth in Contract Section IX(A) and XVIII(C). The "Liquidated Damages" provisions set forth in Amendment 10(5), which is in effect for this case, provides as follows:

> **5. Liquidated Damages**. The Parties agree to amend Section IX(A) to increase the cap on liquidated damages from the Holdback amount to the Holdback amount plus $200,000. To that end, Section IX(A) of the Agreement is amended by changing the text "(until the Holdback runs out)" to the text "(until the sum of the Holdback and $200,000 runs out)" wherever it appears in such Section. Section XVIII(C) of the Agreement is amended to provide that the Contractor's liability to the AGO is limited to the Holdback amount plus $200,000 plus two (2) times the greater of (1) the fees for Professional Services paid in the immediately preceding Fiscal Year or (2) the fees for Professional Services paid in the immediately preceding twelve (12) month period.

{¶8} Liquidated damage provisions are generally enforceable in business contracts in Ohio. *Boone Coleman Const. v. The Village of Piketon*, 145 Ohio St.3d 450, 2016-Ohio-628. Neither party asserts that Amendment 10(5) is an unenforceable penalty. The AGO however asserts that the cap provision should not apply because (1) the cap does not limit actual damages; (2) the cap exclusion for gross negligence or

other tortious conduct applies because of Defendant's gross negligence; (3) the RFP provides for damages up to four times the contract price; (4) the Defendant's material breach precludes the application of the cap; (5) applying the cap would be against public policy; and, (6) the AGO should be permitted to rescind the contract and get full restitution for the $12.5 million it had paid.

{¶9} The general "purpose of contract damages is to compensate the non-breaching party for the losses suffered as a result of the breach." *DeCastro v. Welleston City School Dist. Bd, of Edn.*, 94 Ohio St.3d 197, 2002-Ohio-478, *Alternatives Unlimited-Special Inc. v. Ohio Dept. of Ed.*, 10th Dist. No. 12AP-647, 2013-Ohio-3890; *State ex rel. Stacy v. Batavia Local Dist. Bd. Of Ed.,* 105 Ohio St.3d 476, 2005-Ohio-2974. However, the Court must look to the unambiguous language of the contract to determine if the parties' intent was to alter the general principles of contract law. (See previous discussion.)

{¶10} In the Court's "Interim Decision" it found that Ventech materially breached the Agreement with the AGO by failing to deliver a working system by October 31, 2016, as promised, and the AGO was justified in terminating the Agreement. The Court also found that the AGO failed to prove its claims for fraudulent inducement, negligent misrepresentation and a violation of State Term Contract. With these findings, the AGO's claims that the liquidated damage cap should not apply, because of a finding of gross negligence or other tortious conduct, fails. The term "gross negligence or other tortious conduct" is not defined in the Agreement. Tortious conduct normally stems from breaches of common-law and/or statutory duties, not contractual ones. *See,* Prosser, *Law of Torts*, Section 92, 613-622 (4th Ed. 1978); Dobbs, *Law of Torts*, Section 3, p. 5-7 (2000). Likewise, negligence, gross or otherwise, is tortious conduct. Under traditional definitions of gross negligence, Ventech's conduct would have to amount to near intentional conduct, similar to the definition of willful and/or wanton conduct. *Estate of Sample v. Xenos Christian*, 10th Dist. No. 18AP-804, 2019-Ohio-

5439, ¶ 59.    Absent a definition of "gross negligence or other tortious conduct" in the Agreement, the Court must apply the traditional legal definition.  The Court has already found Ventech breached the agreement in multiple ways, some of which would amount to traditional negligence (i.e. a duty owed, breach of that duty and damages proximately resulting therefrom) or other tortious conduct absent a contract between the parties.  However, other than the "misrepresentation" set forth in the Interim Decision "Fraudulent Inducement," the Court has not found that Ventech acted intentionally, willfully or wantonly.[1]   Further, regardless of the parties' intent regarding the gross negligence exception to the Agreement's cap on damages, Ohio law does not allow for recovery in tort and contract.  As such, Ventech's conduct cannot constitute both a breach of contract and a tort.  *See* Economic Loss Rule - *Corporex Development & Constr. Mgmt. v. Shook, Inc.,* 106 Ohio St.3d 412, 2005 Ohio 5409, ¶ 10-12; *Chemtrol Adhesives v. Am. Mfrs. Mut. Ins.,* 42 Ohio St.3d 40 (1989).  Finally, when executing Amendment 10 and modifying Section XVIII(C), the parties removed from the agreement the exception for "gross negligence or other tortious conduct."

{¶11} In addition, the AGO's claim that applying the liquidated damage cap in this case violates public policy fails for lack of evidentiary or legal support.  *Boone Coleman Const., supra*.  The AGO further argues that a material breach precludes the application of the liquidated damage cap.  While a material breach may relieve the other side of its obligations under the contract, it does not alter the plain language limiting the damages resulting from the breach, material or otherwise.  *See Kurtz, supra,* at ¶ 49 and *Boone Coleman Const., supra*.  For these reasons, the Court finds that the cap on damages contained in Amendment 10 applies, without exception, to limit the damages to which the AGO is entitled.

---

[1]Intentional tort as an exception to the economic loss rule.  *Ross v. PennyMac Loan Servs.,* 6th Cir. No. 18-3487, 2019 U.S. App. Lexis 1404 (Jan. 16, 2019); *Eysoldt v. Proscan Imaging,* 194 Ohio App.3d, 2011 Ohio 2359 (1st Dist.).

{¶12} In it's brief on damages the AGO, for the first time, requests this Court to disregard its previous requests for damages, liquidated or otherwise, and grant it rescission of the Agreement. In its Corrected Amended Complaint, the AGO sought rescission as a remedy for its claims of fraudulent inducement and alleged breach of the State Term Contract. (Counts 3 and 4). It did not request rescission for its breach of contract claim. (Count 1). At trial the AGO did not seek rescission on its breach of contract claim nor did it argue rescission in its post trial brief. The Tenth District Court of Appeals held in *Meyer v. Chieffo*, 10th Dist. No. 10AP-683,193 Ohio App.3d 51, at ¶ 32:

> It has been cited as an elementary rule of contracts that when a material breach occurs, the nonbreaching party may, at his option elect to rescind the contract, or continue it in force and sue for damages for the breach. * * *
>
> '* * * a plaintiff who elected to pursue a breach-of-contract action was not entitled to also pursue a remedy based on rescission of the contract.' In this case, appellant clearly sought to recover damages under a breach-of-contract theory and pursued that theory all the way to a favorable jury verdict. By electing that recourse, appellant closed the door to recovering on rescission.

{¶13} In the case at bar the AGO did not seek rescission as a remedy for its breach of contract claim nor did it pursue rescission as a remedy at trial. It pursued its action for damages upon which it prevailed and cannot now seek rescission.

{¶14} The Court agrees with the AGO that Defendant bears the burden to prove by a preponderance of the evidence that the liquidated damage cap set forth in Amendment 10 applies. *See Coport v. Sparta Consulting, Inc.,* 339 F.Supp. 3d 959 (E.D. Calif. 2018). It has done so by the application of the unambiguous contractual provisions. The parties when they entered the Agreement knew the difficult nature of

future damages and, with negotiations, made a knowing effort to estimate and/or limit their exposure with the liquidated damage cap. The Court is required to enforce the parties' agreement set forth in Amendment 10(5).

{¶15} Having reviewed the parties' briefs as well as the referenced exhibits, the Court finds that, when Section XVIII(C) is applied, the damages set forth in part 5 of the AGO's brief on damages is the proper amount of damages. Section XVIII(C) as modified by Amendment 10 states:

> The Contractor's liability to the AGO is limited to the Holdback amount plus $200,000 plus two (2) times the greater of (1) the fees for Professional Services paid in the immediately preceding Fiscal Year or (2) the fees for Professional Services paid in the immediately preceding twelve (12) month period.

The AGO terminated Ventech on June 30, 2017. Further, as the AGO asserts, the Court finds that the total fees paid in the immediately preceding 12-month period are greater than the fees paid during the immediately preceding fiscal year. This 12-month period spans July 1, 2016 to June 30, 2017.

{¶16} The original holdback amount of $624,798.00 is set forth in the Agreement (Ex. D, p. 4). When the contract amount increased, the holdback also increased. This additional amount, $52,532.00 is set forth in Exhibit 24. The Court therefore finds the total holdback amount is $677,330.00. The fees for professional services paid during the 12-month period immediately preceding June 30, 2017 are set forth in Exhibit 27 and total $2,048,036.94. These fees must be multiplied by two. Therefore, applying the formula set forth in Section XVIII(C) using the above figures results in the following equation: $677,330 + $200,000 + 2($2,048,036.94) =$4,973,403.88.

{¶17} Given the above, the Court finds the damages to which the AGO is entitled total $4,973,403.88.


_____
DALE A. CRAWFORD
Judge

[Cite as *Ventech Solutions, Inc. v. Ohio Atty. Gen.*, 2020-Ohio-476.]

| | |
|---|---|
| VENTECH SOLUTIONS, INC. | Case No. 2017-00628JD |
| Plaintiff/Counter Defendant | Judge Dale A. Crawford |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO ATTORNEY GENERAL | |
| Defendant/Counter Plaintiff | |

{¶18} The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, as well as the Court's November 18, 2019 Interim Decision, judgment is rendered in favor of Ohio Attorney General in the amount of $4,973,403.88. Court costs are assessed against Ventech Solutions, Inc. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

DALE A. CRAWFORD
Judge

Filed January 17, 2020
Sent to S.C. Reporter 2/12/20