[Cite as *Stark Ambulatory Surgical Ctr., L.L.C. v. CS Anesthesia, L.L.C.*, 2022-Ohio-3305.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STARK AMBULATORY SURGERY CENTER, LLC, | : | JUDGES: |
| | : | Hon. Earle E. Wise, P.J. |
| | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| Plaintiff - Appellant | : | |
| | : | |
| -vs- | : | |
| | : | |
| CS ANESTHESIA, LLC, | : | Case No. 2021CA00127 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court
of Common Pleas, Case No.
2019CV02095

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     September 20, 2022

APPEARANCES:

For Plaintiff-Appellant

GARY A. CORROTO
BRANDON W. MCHUGH
Plakas/Mannos
200 Market Avenue North
Suite 300
Canton, Ohio 44702

For Defendant-Appellee

MICHAEL P. MARANDO
Pelini, Campbell & Ricard, LLC
3722 Starr's Centre Drive
Canfield, Ohio 44406

*Baldwin, J.*

{¶1}    Appellant, Stark Ambulatory Surgery Center, LLC, (SASC) appeals the decision of the Stark County Court of Common Pleas granting summary judgment to appellee, CS Anesthesia, LLC (CS) and denying its motion for summary judgment.

## STATEMENT OF THE FACTS AND THE CASE

{¶2}    CS and SASC entered into a contract whereby CS provided SASC medical personnel qualified to administer anesthesia. They operated under the terms of the contract for several years when CS terminated the agreement. After searching for replacements, SASC decided to hire two of the Certified Registered Nurse Anesthetists (CRNA) that had been provided by CS. CS was aware of SASC's plan to hire one of the CRNA's it had provided pursuant to the contract and did not object to the hiring. CS did demand payment for breach of the non-solicitation clause that triggered an obligation of SASC to pay $60,000.00 in liquidated damages. SASC refused to pay and instead filed a complaint seeking invalidation of the liquidated-damages clause leading to litigation and the appeal currently before this court.

{¶3}    CS, created and operated by Brian Cross, contracts with medical providers to supply persons qualified to provide anesthesiology services. SASC is a surgical center focusing on gastroenterology and, prior to entering into an agreement with CS, relied on what was described in the record as "conscious sedation" which presumably can be administered without the assistance of an anesthesiologist or a CRNA.

{¶4}    Brian Cross contacted SASC and, after explaining the services that would be provided, the parties entered into an agreement on December 19, 2015 with an effective date of April 3, 2016. The time gap was agreed upon to allow the CRNA's

assigned by CS to provide services at SASC to become certified by the medical insurers that provided coverage for procedures performed at SASC.

{¶5} Relevant to this appeal, the agreement contained a clause captioned "Non-Solicitation:"

16. Non-Solicitation. The Corporation agrees that it will not, at any time between the Effective Date and the first calendar year anniversary of the termination of this Agreement, either directly or indirectly solicit (or attempt to solicit), induce (or attempt to induce), cause or facilitate: (i) any independent contractor, agent, consultant, employee, representative or associate of Contractor to terminate, his, her or its relationship with Contractor, or (ii) the employment or engagement as an employee, independent contractor, or otherwise of those Anesthesia Providers that render services at the Surgery Center during the term hereof. Should the Corporation breach or otherwise violate subsection (ii) above, it will pay Contractor the sum of Thirty Thousand Dollars ($30,000) for each of the Anesthesia Providers that Corporation hires or otherwise engages, as an award of liquidated damages. The Corporation acknowledges that the actual damages which may be sustained by the Contractor in such an event are not easily quantifiable at this time, and such a liquidated damages award under such circumstances is reasonable and does not constitute a penalty or forfeiture as concerns the Corporation.

{¶6} On July 1, 2019 CS delivered a termination notice to SASC that offered to renegotiate the terms of the agreement by July 10, 2019. SASC did not renegotiate the contract, so the agreement expired on September 29, 2019.

{¶7} Prior to the termination, CS had been regularly providing SASC with the same two CRNAs, Pam Mitchell and Staci Martin. Martin tendered her resignation to CS shortly before CS delivered the termination notice to SASC. Mitchell remained an employee of CS, but after considering her options chose to become an employee of SASC. CS explained that she had this option, was aware of her choice, but did not object. The proprietor of SASC, Nabil Fahmy, M.D., confirmed with Mitchell that CS did not object to her employment with SASC and she explained that CS was aware of her plan.

{¶8} In August 2019, SASC approached Martin and offered her a part time position to begin at the conclusion of the agreement with CS. She agreed, but did not first consult with CS or disclose her plans to anyone at CS.

{¶9} Shortly after the termination of the agreement between CS and SASC, CS sought to enforce the non-solicitation portion of the agreement by asking Dr. Fahmy when payment could be expected. Dr. Fahmy claims that he believed that Cross had approved the hiring of the two CRNAs and would not be seeking to enforce that clause in the agreement. He postponed surgeries and attempted to reach an agreement with CS, but did not succeed. After searching for an alternative to hiring CS employees, and facing the need to postpone medical procedures, SASC employed Mitchell and Martin and resumed operations on October 7, 2019.

{¶10} On October 17, 2019, SASC filed a declaratory judgment action and, relevant to this appeal, sought a finding that the liquidated-damages clause in paragraph

16 of the agreement was void because it was a penalty. SASC also sought judgment for attorney fees, interest and costs. CS answered and counterclaimed seeking to enforce the liquidated-damages clause, asking for judgment in the amount of $60,000.00, interest, costs and attorney fees.

{¶11} Both parties filed motions for summary judgment on September 18, 2020, followed by memoranda contra and replies in support of their respective positions. The trial court found that the liquidated-damages clause was not a penalty and concluded that "Stark Ambulatory breached the contract in this case with the hiring of CRNA's Pamela Mitchell and Staci Martin, and that as a result of that breach CS Anesthesia is entitled to liquidated damages in the amount of $30,000 for each CRNA hired for a total of amount of $60,000." (Judgment Entry, March 8, 2021, p. 7).

{¶12} SASC filed a notice of appeal on April 6, 2021 and CS filed a notice of cross-appeal on April 15, 2021. CS also moved to dismiss the appellant's appeal or, alternatively, a motion for limited remand claiming that it had requested attorney fees, but that "the attorney-fee claim was not specifically addressed by the trial court as(SIC) its Judgment Entry. Nor does the Judgment Entry contain Civ. R. 54(B) language." SASC opposed the motion "because there are no post judgment motions pending before the trial court, and CS is time barred from filing a motion with the trial court seeking attorneys' fees."

{¶13} On May 10, 2021, this Court dismissed the appeal for lack of a final appealable order. We held that there was no motion pending, so a limited remand was not appropriate and that "[t]he order being appealed in this case does not address the issue of attorney fees, therefore, we find the order is not yet a final order."

**{¶14}** On June 17, 2021 CS filed a motion with the trial court explaining the parties were unable to resolve their differences and settle the dispute regarding attorney fees and requesting judgment. SASC opposed the motion arguing that Civ.R. 59 imposed a time limit for such motions and that time limit had expired. On July 13, 2021 the trial court found that SASC's "argument regarding the timeliness of Defendant's motion for attorney fees is without merit." The trial court explained that "[d]ue to the inadvertence of the Court, the Court failed to address Defendant's summary judgment motion regarding attorney fees and costs and expenses." The court ordered that the parties participate in a phone conference to "choose a hearing date regarding Defendant's motion for attorney fees and costs and expenses." That hearing was scheduled for October 14, 2021.

**{¶15}** On October 12, 2021, the parties filed a pleading captioned The Parties Stipulation Regarding the Amount of Defendant CS Anesthesia, LLC's Attorneys' Fees. That pleading states:

> Now come the Parties, Stark Ambulatory Surgery Center, LLC ("SASC") and CS Anesthesia, LLC ("CS") who hereby provide the following stipulation regarding CS' attorneys' fees for the proceedings before this Court. The Parties hereby stipulate that CS' attorneys' fees for proceedings before this Court are $22,141.80. This stipulation does not prevent SASC from challenging the validity, under any grounds, of CS' right to seek attorneys' fees before the Court of Appeals or Ohio Supreme Court. Further, this stipulation solely relates to attorneys' fees incurred by CS during the proceedings before this Court. This stipulation does not prevent CS from

seeking, under any grounds, attorney fees incurred for proceedings before the Court of Appeals or Ohio Supreme Court.

**{¶16}** This pleading is signed by counsel for the parties only.

**{¶17}** SASC filed a notice of appeal and docketing statement on November 10, 2021 and, within the docketing statement references judgments dated March 8, July 13 and October 12, 2021 as subjects of the appeal. SASC moved to stay execution on the same day, and CS responded that it had no objection contingent upon SASC providing an adequate supersedeas bond or irrevocable letter of credit. The trial court granted the motion "to stay the execution of judgment pending appeal in this matter."

**{¶18}** Upon review of the record, this Court acknowledged the stipulation regarding the amount of attorney fees, but found that stipulation did not comprise a judgment by the trial court. The appeal was stayed and the matter remanded to the trial court to journalize its order. The trial court then ordered "attorneys' fees to defendant CS Anesthesia LLC, for proceedings before this court in the amount of $22,141.80."

**{¶19}** The matter is now properly before this court.

**{¶20}** SASC submitted two assignments of error:

**{¶21}** "I. THE TRIAL COURT ERRED WHEN IT DENIED SASC'S MOTION FOR SUMMARY JUDGMENT AND GRANTED CS'S CROSS-MOTION FOR SUMMARY JUDGMENT."

**{¶22}** "II. THE TRIAL COURT ERRED WHEN IT AWARDED CS ATTORNEYS' FEES UNDER THE CONTRACT BECAUSE CS MISSED THE MANDATORY DEADLINE IMPOSED BY OHIO R. CIV. P. 59(B) TO FILE A MOTION FOR ATTORNEYS' FEES."

## STANDARD OF REVIEW

**{¶23}** We review cases involving a grant of summary judgment using a de novo standard of review. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, at ¶ 24. Summary judgment is appropriately granted when " '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' " *Esber Beverage Co. v. Labatt USA Operating Co.*, 138 Ohio St.3d 71, 2013-Ohio-4544, 3 N.E.3d 1173, ¶ 9, citing *M.H. v. Cuyahoga Falls,* 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12, internal citation omitted; Civ.R. 56(C).

**{¶24}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably toward the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.,* 67 Ohio St.2d 427, 433, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning–Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 323, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.,* 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist. 1999).

**{¶25}** The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record

which demonstrates absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Wentling v. David Motor Coach Ltd.*, 5th Dist. No. 2017CA00190, 2018-Ohio-1618, 111 N.E.3d 610, ¶ 23 quoting *Dresher v. Burt,* 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Downtown Enterprises Co. v. Mullet*, 5th Dist. Holmes No. 17CA016, 2018-Ohio-3228, ¶ 50, quoting *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).

## I.

**{¶26}** In its first assignment of error, SASC argues the trial court erred when it denied its motion for summary judgment and instead granted CS's motion for summary judgment. SASC lists several grounds in support of its assignment of error, all of which are closely related to the liquidated-damages provision described in the agreement between the parties. We will resolve this alleged error by determining whether the liquidated-damages clause in the parties' agreement is a penalty and not representative of damages.

**{¶27}** Liquidated damages are "damages that the parties to a contract agree upon, or stipulate to, as the actual damages that will result from a future breach of the contract." *Sheffield–King Milling Co. v. Domestic Science Baking Co.*, 95 Ohio St. 180, 183, 115 N.E. 1014 (1917), as quoted in *Boone Coleman Constr., Inc. v. Piketon,* 145 Ohio St.3d 450, 2016-Ohio-628, 50 N.E.3d 502, ¶ 11. The Supreme Court of Ohio summarized the

history and the proper analysis of liquidated damage clauses in *Boone Coleman Constr.,*

*Inc. v. Piketon*, 145 Ohio St.3d 450, 2016-Ohio-628, 50 N.E.3d 502. While courts viewed

liquidated damage clauses with a "gimlet eye" in the past, the modern rule is "to look with

candor, if not with favor" upon liquidated damages provisions in contracts when those

provisions were "deliberately entered into between parties who have equality of

opportunity for understanding and insisting upon their rights." (Internal citations omitted.)

*Boone* at ¶ 14.

{¶28} Parties to contracts, attorneys and courts have recognized that liquidated

damage clauses serve the valid purpose of including an amount for the actual damages

resulting from a breach preventing controversy regarding the amount of damages. These

provisions allow the contracting parties to:

> "protect themselves against the difficulty, uncertainty, and expenses that
>
> necessarily follow judicial proceedings when trying to ascertain damages."
>
> *Carrothers Constr. Co.,* 288 Kan. at 754, 207 P.3d 231. This benefit is
>
> particularly valuable when "actual damages are likely to be difficult to
>
> quantify in the event that the contract is breached." *Bassin* at 723.
>
> Liquidated damages provisions thereby "promot [e] prompt performance of
>
> contracts" and "adjust[ ] in advance, and amicably, matters **509 the
>
> settlement of which through courts would often involve difficulty,
>
> uncertainty, delay and expense." *Wise* at 366, 39 S.Ct. 303.

*Boone* at ¶ 14.

{¶29} As noted by the court in *Boone* "The difficult problem, in each case, is to

determine whether or not the stipulated sum is an unenforceable penalty or an

enforceable provision for liquidated damages." *Gustafson & Co., Inc. v. South Dakota, 83 S.D. 160, 164, 156 N.W.2d 185 (1968)* as quoted in *Boone* at ¶ 16. The *Boone* court relied on our definition of a penalty in *Piper v. Stewart & Inlow,* 5th Dist. Licking No. CA–2530, 1978 WL 217430, *1 (June 14, 1978), quoting 22 American Jurisprudence 2d, Damages, Section 213, at 298 (1965) as:

> "A sum inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default, or by way of security for actual damages which may be sustained by reason of nonperformance, and it involves the idea of punishment. A penalty is an agreement to pay a stipulated sum on breach of contract, irrespective of the damage sustained. Its essence is a payment of money stipulated as *in terrorem* of the offending party, *while the essence of liquidated damages is a genuine *455 covenanted pre-estimate of damages.* The amount is fixed and is not subject to change; however, if the stipulated sum is deemed to be a penalty, it is not enforceable and the nondefaulting party is left to the recovery of such actual damages as he can prove."(Emphasis sic.)

**{¶30}** In *Boone*, the Supreme Court affirmed its rule for analyzing liquidated-damages clauses first described in *Samson Sales, Inc. v. Honeywell*, Inc., 12 Ohio St.3d 27, 465 N.E.2d 392 (1984), syllabus:

> Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would

be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.

*Id.,* at syllabus.

**{¶31}** The Boone court concluded that:

Valid and enforceable liquidated damages provisions are those intended by the parties to give reasonable compensation for damages, but provisions that impose amounts that are "manifestly inequitable and unrealistic" are deemed unenforceable penalties. *Id.* at 28, 465 N.E.2d 392. Since Samson Sales, we have **510 reiterated its holding once, in *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 380, 613 N.E.2d 183 (1993), and have not departed from its teachings.

*Boone*, ¶ 19.

**{¶32}** The analysis described the Supreme Court of Ohio in *Samson Sales* remains the template for determining whether a liquidated-damages provision is instead an impermissible penalty and therefore we are bound to apply that analysis to the facts in this case.

**ANALYSIS**

**{¶33}** We first must disagree with SASC's interpretation of the first phrase of the Supreme Court Rule as stated in *Samson*. SASC translates the phrase "Where the

parties have agreed on the amount of damages, ascertained by estimation and adjustment" as requiring that the parties conduct an ascertainment and estimation of *actual damages*. (Emphasis sic.) *Samson* makes no reference to actual damages and such a requirement would create a fatal internal inconsistency as the *Samson* rule requires that damages be "uncertain as to amount and difficult of proof." The very nature of a valid liquidated-damages clause would make ascertainment and estimation of actual damages impossible as the *Samson* rule requires that the damages be "uncertain as to amount and difficult of proof."

**{¶34}** Instead we find that the first clause in the *Samson* test obligates the parties to view the potential damages based upon the information they possessed at the time of executing the contract to insure that the provision was reasonable and was reasonably related to actual damages. This duty is consistent with the guidance to trial courts to determine "If the provision was reasonable *at the time of formation* and it bears a reasonable (not necessarily exact) relation to actual damages, the provision will be enforced. See 3 Restatement of Contracts, *supra*, at 157, Section 356(1)." (Emphasis sic). *Kindle Rd. Co. v. Trickle,* 5th Dist. Licking No. 03CA99, 2004-Ohio-4668, ¶ 21.

**{¶35}** 'If a provision is construed to be one for liquidated damages, the sum stipulated forms, in general, the measure of damages in case of a breach, and the recovery must be for that amount. No larger or smaller sum can be awarded even though the actual loss may be greater or less.' " *Boone, supra,* ¶ *12,* quoting 22 American Jurisprudence 2d, Damages, Section 235, at 321 (1965). "Put another way, "a liquidated-damages clause in a contract is an advance settlement of the anticipated actual damages

arising from a future breach." *Carrothers Constr. Co., L.L.C. v. S. Hutchinson,* 288 Kan. 743, 754, 207 P.3d 231 (2009). *Boone, supra,* ¶ *12.*

**{¶36}** If actual damages are different from the agreed upon liquidated damages, that difference alone does not warrant invalidation of the liquidated-damages clause. The appellate court's role is not to determine what the parties should have contracted for based on the court's understanding of the damages after the breach. *Lake Ridge Academy*, 66 Ohio St.3d at 382, 613 N.E.2d 183, quoted in *Boone, supra* ¶ 39. The *Boone* court found use of a retrospective analysis to find that the total amount of damages awarded *** was so unreasonable as to constitute a penalty" was reversible error. *Boone supra* ¶ 42. Instead the Supreme Court of Ohio requires a "prospective or 'front end' analysis of a liquidated-damages provision [that] focuses on the reasonableness of the clause at the time the contract was executed rather than looking at the provision retrospectively, i.e., ascertaining the reasonableness * * * of the damages with the benefit of hindsight after a breach." *Boone* ¶ 36.

**{¶37}** SASC contends that a retrospective analysis of the liquidated damages is appropriate and cites cases in support of its position, but those cases, when thoroughly reviewed, did not rely upon a retrospective comparison of the actual damages with the liquidated damages, but, instead found the damages to be readily calculable and therefore not in compliance with the rule described in *Samson*. In *Lakewood Creative Costumers v. Sharp*, 31 Ohio App.3d 116, 117, 509 N.E.2d 77, 79 (8th Dist.1986) the court found that "the actual damages incurred by the breach are not uncertain or difficult to ascertain. The actual damages incurred are relatively easy to ascertain. They simply consist of any lost rental sales, together with the cost of getting the costume returned.

Liquidated damages are appropriate only where actual damages are uncertain or difficult to ascertain."

**{¶38}** In *Courtad v. Winner*, 9th Dist. Summit No. 20630, 2002-Ohio-2094, ¶ 25, the court held "[t]his type of damages would ordinarily not be difficult to prove." And the court in *Heskett Ins. Agency, Inc. v. Braunlin*, 4th Dist. Ross No. 11CA3234, 2011-Ohio-6100, ¶ 28 held that "[b]ecause damages in this case are certain and easy to prove, i.e. they can easily be calculated by applying the legal rate of interest to periods of default, the "liquidated damages" clause in the settlement agreement constitutes an unenforceable penalty."

**{¶39}** SASC does argue that the damages in this case would be easy to calculate, but it fails to provide an example of how the damages may have been ascertainable with any confidence at the outset of the contractual period. The parties agreed to the rate to be paid for the services provided by CS, but the contract expressly stated that the parties understood that the need for services was not predictable. Paragraph 8 of the contract describes the uncertainty of the demand for services and how it would be resolved:

> The parties understand that due to the nature of services provided at the Surgery Center, the surgery schedule frequently changes and the need for anesthesia Services fluctuates. It is not possible for Corporation to determine with certainty what coverage will be needed due to emergencies and add-on cases. It is anticipated that Corporation will require anesthesia Services between three (3) and six (6) days per week for an average of eight (8) hours per day. Corporation agrees to notify Contractor two (2) weeks in advance of its anesthesia Service needs and will provide

Contractor with a schedule two (2) weeks in advance designating dates and times that anesthesia Services are required. Contractor will ensure that Anesthesia Providers are available to provide reasonably requested coverage for the Corporation.

**{¶40}** Compensation due CS for breach of the contract with regard to the services provided would not be possible without a clear obligation to pay for a minimum or maximum number of service hours and such a requirement does not exist in the contract. More importantly, the liquidated-damages clause is not applicable to the obligation of SASC to pay for the services of CS. The clause at issue is triggered only by a breach of the non-solicitation clause of the contract which prohibits SASC hiring of any CS contractor. The hourly rate of the CRNAs provided by CS and the number of hours worked or anticipated are irrelevant in the calculation of the damages for the violation of this portion of the contract. SASC's argument that the damages for a breach were readily calculable due to a set rate for services and a predictable demand is therefore inapplicable to the breach described in the counterclaim.

**{¶41}** We find that the damages for the breach of the Non-Solicitation portion of the contract were uncertain in amount and difficult to prove at the execution of the contract.

**{¶42}** Further, we find that the amount agreed upon by the parties, $30,000.00 was not an unreasonable amount in the context of the contract. The two CRNAs that were the subject of this dispute were earning a total $355,000.00 annually so, at a minimum, SASC was paying CS $355,000.00 for the services provided by CS. SASC was obligated to pay CS $1,100 per day when a contractor worked more than seven hours, creating a

potential cash flow of $286,000.00 per CRNA. The CRNAs were clearly a valued asset for SASC and CS. If the contractor would leave CS and be hired by another party, CS would lose a valuable asset and all that it had invested in locating and certifying that person's qualification to provide services for CS.

**{¶43}** Brian Cross estimated the value of each CRNA to be equivalent to what a headhunter would charge for the search and acquisition of a similarly qualified person. Cross was familiar with the business of locating and retaining CRNA's and the amount charged by organizations that provided this service and his testimony regarding this amount was not rebutted. SASC objects only to the fact that it did not hire CS as a headhunter and while that is true, that argument does not meet the significance of the testimony. CS is not presenting this information as an argument that it served as a headhunter but only as a basis for arguing that the liquidated damages were reasonable at the time the parties executed the contract. And, while SASC did not retain CS as a headhunter, it did benefit from the relationship in the same manner as if it had retained a service to locate CRNAs to join its practice.

**{¶44}** SASC gained a valuable asset in that the CRNAs provided by CS were certified to work for its facility, were familiar with its procedures and had the trust of the doctors at that facility. SASC had planned to hire the CRNAs previously under contract to CS, but once reminded of the provisions of the non-solicitation clause in the contract, SASC decided to not retain either CRNA but continued searching for CRNAs. The search was unsuccessful, and SASC decided to hire the CRNAs that had worked with CS despite being notified that CS planned to pursue enforcement of the non-solicitation clause and the $30,000.00 per contractor damage payment. We find that SASC found the potential

charge for a violation of the contract to be a reasonable cost to avoid postponing surgical procedures while they continued to search for replacement CRNAs. The fact that they did not hire CS to provide search services does not undermine the reasonableness of the amount of the damages described in the liquidated-damages clause when viewed prospectively from the time of the formation of the contract. *Boone, supra* ¶ 36.

**{¶45}** We follow the modern rule and "look with candor, if not with favor" upon liquidated-damages provisions in contracts when those provisions were "deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights." (Citations omitted) *Boone supra* ¶ 14. CS and SASC are sophisticated parties who have created and operated businesses in the medical field and we find neither allegation nor evidence that this contract was anything but an arm's length transaction. And the contract is "consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof." *Boone, supra* ¶ 18. SASC does not contend otherwise and the language used is clear and unequivocal in its requirement of payment of $30,000.00 for each of the Anesthesia Providers SASC hired or otherwise engaged in violation of paragraph 16(ii) of the contract.

**{¶46}** We find that the liquidated-damages clause in this contract fulfills the requirements of Samson because the damages would be uncertain as to amount and difficult of proof, the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and the contract is consistent with the conclusion

that it was the intention of the parties that damages in the amount stated should follow the breach thereof.

**{¶47}** SASC's first assignment of error is overruled.

**II**.

**{¶48}** SASC contends the trial court erred when it awarded CS attorney fees, relying on the terms of Civ.R. 59(B) and arguing that CS's claim was barred because its motion for fees was not filed within the time limit described in that Rule. CS contends that it requested attorney fees in its counterclaim and repeated the request in its motion for summary judgment, and the trial court neglected to address that demand. Civil Rule 59(B), it argues, is inapplicable.

**{¶49}** CS filed an answer and counterclaim and, within the counterclaim it cited to paragraph 15 of the agreement which referred to indemnification for all "costs and expenses (including, but not limited to, court costs, reasonable costs of suits, attorneys and professional fees): (ii) arising out of the breach of this Agreement by the indemnifying party." CS's counterclaim described a claim for breach of contract and demanded judgment against plaintiff, including a claim for attorney fees. In its motion for summary judgment, CS repeated its request for attorney fees and included a reference to paragraph 15 of the agreement in support of that request.

**{¶50}** The trial court granted CS's motion for summary judgment and concluded: "For the reasons set forth above, the Court finds that Stark Ambulatory breached the contract in this case with the hiring of CRNA's Pamela Mitchell and Staci Martin, and that as a result of that breach CS Anesthesia is entitled to liquidated damages in the amount

of $30,000 for each CRNA hired for a total of amount of $60,000." The trial court did not address the demand for attorney fees.

**{¶51}** SASC appealed the trial court's judgment and CS moved to dismiss the appeal because the trial court had not addressed the request for attorney fees. We found that:

> In its counterclaim filed in the action below, Appellee requested attorney fees.
>
> The Supreme Court has held, "(W)hen attorney fees are requested in the original pleadings, an order that does not dispose of the attorney-fee claim and does not include, pursuant to Civ.R. 54(8), an express determination that there is no just reason for delay, is not a final, appealable order. *Internatl. Bhd. of Electrical Workers, Local Union No. 8 v. Vaughn Industries, L.L.C.*, 116 Ohio St.3d 335, 2007-Ohio -6439, 879 N.E.2d 187, ¶ 2.
>
> Appellant argues in part this case should be remanded rather than dismissed pursuant to App.R. 4. However, the plain language of the rule states that remand is appropriate where a `motion" for attorney fees has been filed. Appellant contends Appellee did not file a motion for attorney fees. Therefore, we find a remand under App.R. 4 is not permitted.
>
> The order being appealed in this case does not address the issue of attorney fees, therefore, we find the order is not yet a final order. The motion to dismiss for lack of a final, appealable order is granted.

**{¶52}** We dismissed the prior appeal for lack of a final, appealable order because we found that the trial court did not address the demand for fees that was described in counterclaim and the motion for summary judgment.

**{¶53}** The matter was returned to the trial court and it appears that the parties made some attempt to resolve the issue of attorney fees. CS stated that: "Efforts initiated by Defendant to amicably resolve this case have failed since the time that the appeal was dismissed, and accordingly, Defendant is filing this motion." (Defendant's Motion for Attorney Fees with Supporting Memorandum, June 6, 2021, p. 1) SASC pointed to Civ.R. 59(B) and argued this motion was due twenty-eight days after entry of judgment, and that failure to timely file the motion barred relief.

**{¶54}** CS's motion, though captioned "Motion for Attorney Fees" is not truly a motion for attorney fees that would be subject to the deadline of Civ.R. 59(B), but instead it serves as a notice to the trial court that that parties cannot settle the matter that remains pending before the court, the issue of whether CS is entitled to attorney fees and the amount due, if any. CS's motion refers to the dismissal of the appeal for the lack of final appealable order and rehashes the argument that it made in the trial court referring to the breach and paragraph 15 of the agreement. The substance of CS's motion is not a request for fees that would be subject to Civ. R. 59(B), but a request for the court to issue the judgment on a claim that remained unresolved and prevented a final appealable order. *Home Loan Savings Bank v. Jahweh LLC*, 5th Dist. Coshocton No. 2022CA0001, 2022-Ohio-1118, ¶ 12. The trial court recognized and confirmed that it had inadvertently failed to address the claim for attorney fees and began the process of scheduling a hearing on

that issue in its entry of July 13, 2021. The parties stipulated to the amount of fees and the trial court journalized its order regarding fees on July 15, 2022.

**{¶55}** We hold that the facts in this case support a conclusion that the award of attorney fees by the trial court was the result of the demand in the counterclaim and CS's motion for summary judgment, not an independent motion for fees, and therefor were not subject to the deadline in Civ.R. 59(B). SASC's second assignment of error is overruled.

**{¶56}** The decision of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Wise, Earle., P.J. and

Wise, John, J. concur.